

EXHIBIT A

**Membership Interest and Note Purchase Agreement**

between

**Dari Concepts, LLC,**

**Angela Kilic-Cave,**

**EF Global Corporation**

**TieTek Global LLC**

**TTG Real Estate LLC**

**TTG Operating LLC**

**LT Resources, Inc.**

and

**EFG TieTek, LLC**

dated as of

August 4, 2022

# TABLE OF CONTENTS

**Page**

Article I Purchase and Sale .................................................................................................... 1

    Section 1.1    Purchase of Membership Interests ................................................. 1

    Section 1.2    Purchase Price ............................................................................... 1

    Section 1.3    Note Purchase ............................................................................... 1

    Section 1.4    Closing ......................................................................................... 2

    Section 1.5    Transfer Taxes .............................................................................. 2

    Section 1.6    Allocation of Company Income and Loss ..................................... 2

Article II REPRESENTATIONS AND WARRANTIES OF SELLER ..................................... 2

    Section 2.1    Organization and Authority of Seller; Enforceability.................... 2

    Section 2.2    No Conflicts; Consents ................................................................. 2

    Section 2.3    Ownership of Membership Interests. ............................................ 3

    Section 2.4    Brokers ......................................................................................... 3

    Section 2.5    Non-Foreign Status ...................................................................... 3

    Section 2.6    No Other Representations or Warranties ....................................... 3

Article III REPRESENTATIONS AND WARRANTIES OF BUYER ..................................... 3

    Section 3.1    Organization and Authority of Buyer; Enforceability ................... 3

    Section 3.2    No Conflicts; Consents ................................................................. 4

    Section 3.3    Investment Purpose ...................................................................... 4

    Section 3.4    Brokers ......................................................................................... 4

    Section 3.5    Legal Proceedings ........................................................................ 4

Article IV REPRESENTATIONS AND WARRANTIES OF EF GLOBAL ............................ 5

    Section 4.1    Organization and Authority of EF Global; Enforceability ............ 5

    Section 4.2    No Conflicts; Consents ................................................................. 5

    Section 4.3    Brokers ......................................................................................... 5

    Section 4.4    Legal Proceedings ........................................................................ 5

Article V REPRESENTATIONS AND WARRANTIES OF ANGELA KILIC-CAVE .............. 6

    Section 5.1    Ownership of the Angela Note. .................................................... 6

Article VI Closing Deliveries ................................................................................................. 6

    Section 6.1    Seller's Deliveries ........................................................................ 6

    Section 6.2    Buyer's Deliveries ........................................................................ 7

4866-4144-9259.v4

Article VII Indemnification ..................................................................................................... 8

    Section 7.1    Indemnification By Seller ................................................................................. 8

    Section 7.2    Indemnification By Buyer ................................................................................. 9

    Section 7.3    Indemnification by EF Global ........................................................................... 9

    Section 7.4    Special Indemnification by Buyer, EF Global, the Company, TTG RE, TTG Op, and LT ............................................................................................... 9

    Section 7.5    Indemnification Procedures .............................................................................. 9

    Section 7.6    Payments ........................................................................................................ 10

    Section 7.7    Tax Treatment of Indemnification Payments ................................................. 10

    Section 7.8    Exclusive Remedies ....................................................................................... 10

Article VIII Miscellaneous ..................................................................................................... 10

    Section 8.1    Survival .......................................................................................................... 10

    Section 8.2    Tax Matters .................................................................................................... 10

    Section 8.3    Releases of Angela Obligations ..................................................................... 10

    Section 8.4    Expenses ......................................................................................................... 11

    Section 8.5    Further Assurances ......................................................................................... 11

    Section 8.6    Notices ............................................................................................................ 11

    Section 8.7    Headings ......................................................................................................... 12

    Section 8.8    Severability .................................................................................................... 12

    Section 8.9    Entire Agreement ........................................................................................... 12

    Section 8.10   Successors and Assigns ................................................................................... 12

    Section 8.11   No Third-Party Beneficiaries .......................................................................... 12

    Section 8.12   Amendment and Modification ........................................................................ 12

    Section 8.13   Waiver ............................................................................................................ 12

    Section 8.14   Governing Law ............................................................................................... 13

    Section 8.15   Submission to Jurisdiction .............................................................................. 13

    Section 8.16   Waiver of Jury Trial ....................................................................................... 13

    Section 8.17   Specific Performance ...................................................................................... 13

    Section 8.18   Counterparts ................................................................................................... 13

4866-4144-9259.v4

# MEMBERSHIP INTEREST AND NOTE PURCHASE AGREEMENT

This Membership Interest and Note Purchase Agreement (this "**Agreement**"), dated as of August 4, 2022, is entered into between Dari Concepts, LLC a Delaware limited liability company ("**Seller**"), Angela Kilic-Cave ("**Angela**"), EF Global Corporation, a Delaware corporation ("**EF Global**"), TieTek Global LLC, a Texas limited liability company (the "**Company**"), TTG Real Estate LLC, a Texas limited liability company ("**TTG RE**"), TTG Operating LLC, a Texas limited liability company ("**TTG Op**"), LT Resources, Inc., a Texas corporation ("**LT**") and EFG TieTek, LLC, a Delaware limited liability company ("**Buyer**").

## RECITALS

(A) WHEREAS, Seller owns 4,500,000 Class A Units (the "**Membership Interests**") of the Company, which represents 52.94% of the outstanding membership interests of the Company; and

(B) WHEREAS, Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, the Membership Interests, subject to the terms and conditions set forth herein; and

(C) WHEREAS, Angela wishes to sell to Buyer, and Buyer wishes to purchase from Angela, that certain TieTek Global LLC promissory note in the amount of $1 million made by the Company and issued to Angela in February 2021 (the "**Angela Note**").

(D) NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

**Section 1.1    Purchase of Membership Interests**.  Subject to the terms and conditions set forth herein, at the Closing (as defined herein), Seller shall sell to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title, and interest in and to the Membership Interests, free and clear of any mortgage, pledge, lien, charge, security interest, claim, or other encumbrance ("**Encumbrance**"), for the consideration specified in Section 1.2 and Section 1.3.

**Section 1.2    Purchase Price**.  The aggregate purchase price for the Membership Interests shall be $5 million (the "**Purchase Price**").  The Buyer shall deliver a promissory note from Buyer, EF Global, the Company, TTG RE, TTG Op, and LT as co-makers in the amount of $5 million with interest accruing at 6% per annum, due and payable in full one year from the date of Closing.

**Section 1.3    Note Purchase**.  In connection with the purchase of the Membership Interests, the Buyer shall pay $1 million to Angela (the "**Angela Note Payment**") at the Closing (as defined herein) in cash, by wire transfer of immediately available funds to purchase the Angela Note.  The Buyer hereby covenants and agrees that should the Buyer fail for any reason

4866-4144-9259.v4

to make the Angela Note Payment at Closing, this Agreement and any and all transactions contemplated hereby shall be null and void and of no force or effect.

**Section 1.4     Closing**.  The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place simultaneously with the execution of this Agreement on the date of this Agreement (the "**Closing Date**") at the offices of the Company or remotely by exchange of documents and signatures (or their electronic counterparts).  The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

**Section 1.5     Transfer Taxes**.  Buyer shall pay for any sales, use or transfer taxes, documentary charges, recording fees or similar taxes, charges, fees, or expenses, if any, that become due and payable as a result of the transactions contemplated by this Agreement.

**Section 1.6     Allocation of Company Income and Loss**.  Buyer and Seller shall request that the Company allocate all items of Company income, gain, loss, deduction, or credit attributable to the Membership Interests for the taxable year of the Closing based on a closing of the Company's books as of the Closing Date.

**ARTICLE II**
**REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller represents and warrants to Buyer that the statements contained in this Article II are true and correct as of the date hereof.  For purposes of this Article II, "Seller's knowledge," "knowledge of Seller," and any similar phrases shall mean the actual knowledge of Angela Kilic-Cave.

**Section 2.1     Organization and Authority of Seller; Enforceability**.  Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Delaware.  Seller has full limited liability company power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery, and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite limited liability company action on the part of Seller.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution, and delivery by the other parties hereto) this Agreement and the documents to be delivered hereunder constitute legal, valid, and binding obligations of Seller, enforceable against Seller in accordance with their respective terms, except as may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other similar laws affecting the enforcement of creditors' rights generally or by general principles of equity.

**Section 2.2     No Conflicts; Consents**.  The execution, delivery, and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of formation, LLC agreement, or other organizational documents of Seller; (b) violate

2

or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation applicable to Seller, except where the violation or conflict would not, individually or in the aggregate, have a material adverse effect on Seller's ability to consummate the transactions contemplated hereby on a timely basis; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party, except where the conflict, violation, default, termination, cancellation, modification, or acceleration would not, individually or in the aggregate, have a material adverse effect on Seller's ability to consummate the transactions contemplated hereby on a timely basis; or (d) result in the creation or imposition of any Encumbrance on the Membership Interests.

**Section 2.3     Ownership of Membership Interests.**

(a)     Seller is the sole legal, beneficial, record, and equitable owner of the Membership Interests, free and clear of all Encumbrances whatsoever.

(b)     To Seller's Knowledge, the Membership Interests were issued in compliance with applicable laws.  To Seller's Knowledge, the Membership Interests were not issued in violation of the organizational documents of the Company.

**Section 2.4     Brokers**.  No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

**Section 2.5     Non-Foreign Status**.  Seller is not a foreign person as defined in Treasury Regulations Section 1.1446(f)-1(b)(4) or Section 1.1445-2.

**Section 2.6     No Other Representations or Warranties**.  Except for the representations and warranties contained in this Article II, neither Seller nor any member, manager, officer, employee, or agent of Seller has made or makes any other express or implied representation or warranty, either written or oral, on behalf of Seller.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article III are true and correct as of the date hereof.  For purposes of this Article III, "Buyer's knowledge," "knowledge of Buyer" and any similar phrases shall mean the actual knowledge of D. Elroy Fimrite.

**Section 3.1     Organization and Authority of Buyer; Enforceability**.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Delaware.  Buyer has full limited liability company power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery, and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all

4866-4144-9259.v4

requisite limited liability company action on the part of Buyer.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution, and delivery by the other parties hereto) this Agreement and the documents to be delivered hereunder constitute legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms, except as may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other similar laws affecting the enforcement of creditors' rights generally or by general principles of equity.

**Section 3.2    No Conflicts; Consents**.  The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of formation, LLC agreement or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation applicable to Buyer, except where the violation or conflict would not, individually or in the aggregate, have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby on a timely basis.  No consent, approval, waiver, or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby, except such consents, approvals, waivers, or authorizations which would not, in the aggregate, have a material adverse effect on the Buyer's ability to consummate the transactions contemplated hereby on a timely basis.

**Section 3.3    Investment Purpose**.  Buyer is acquiring the Membership Interests solely for its own account for investment purposes and not with a view to, or for offer or sale in connection with, any distribution thereof.  Buyer acknowledges that the Membership Interests are not registered under the Securities Act of 1933, as amended, or any state securities laws, and that the Membership Interests may not be transferred or sold except pursuant to the registration provisions of the Securities Act of 1933, as amended or pursuant to an applicable exemption therefrom and subject to state securities laws and regulations, as applicable.

**Section 3.4    Brokers**.  No broker, finder or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

**Section 3.5    Legal Proceedings**.  There is no claim, action, suit, proceeding or governmental investigation ("**Action**") pending or, to Buyer's knowledge, threatened against or by Buyer or any Affiliate of Buyer that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement, except any Actions that would not, individually or in the aggregate, have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby on a timely basis.  To Buyer's knowledge, no event has occurred or circumstances exist that may give rise or serve as a basis for any such Action.

4866-4144-9259.v4

# ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF EF GLOBAL

EF Global represents and warrants to Seller and to Angela that the statements contained in this Article IV are true and correct as of the date hereof.  For purposes of this Article IV, "EF Global's knowledge," "knowledge of Global" and any similar phrases shall mean the actual knowledge of D. Elroy Fimrite.

**Section 4.1    Organization and Authority of EF Global; Enforceability**.  EF Global is a corporation duly organized, validly existing and in good standing under the laws of the state of [●].  EF Global has corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery, and performance by EF Global of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of EF Global.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by EF Global, and (assuming due authorization, execution, and delivery by the other parties hereto) this Agreement and the documents to be delivered hereunder constitute legal, valid, and binding obligations of EF Global enforceable against EF Global in accordance with their respective terms, except as may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other similar laws affecting the enforcement of creditors' rights generally or by general principles of equity.

**Section 4.2    No Conflicts; Consents**.  The execution, delivery and performance by EF Global of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, bylaws or other organizational documents of EF Global; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation applicable to EF Global, except where the violation or conflict would not, individually or in the aggregate, have a material adverse effect on EF Global's ability to consummate the transactions contemplated hereby on a timely basis.  No consent, approval, waiver, or authorization is required to be obtained by EF Global from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by EF Global of this Agreement and the consummation of the transactions contemplated hereby, except such consents, approvals, waivers, or authorizations which would not, in the aggregate, have a material adverse effect on the EF Global's ability to consummate the transactions contemplated hereby on a timely basis.

**Section 4.3    Brokers**.  No broker, finder or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of EF Global.

**Section 4.4    Legal Proceedings**.  There is no Action pending or, to EF Global's knowledge, threatened against or by EF Global or any Affiliate of EF Global that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement, except any Actions that would not, individually or in the aggregate, have a material adverse effect on EF Global's ability to consummate the transactions contemplated hereby on a timely

4866-4144-9259.v4

basis. To EF Global's knowledge, no event has occurred or circumstances exist that may give rise or serve as a basis for any such Action.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF ANGELA KILIC-CAVE

Angela Kilic-Cave represents and warrants to Buyer that the statements contained in this Article V are true and correct as of the date hereof. For purposes of this Article V, "Angela's knowledge," "knowledge of Angela" and any similar phrases shall mean the actual knowledge of Angela Kilic-Cave.

**Section 5.1    Ownership of the Angela Note.**

(a)    Angela Kilic-Cave is the sole legal, beneficial, record, and equitable owner of the Angela Note, free and clear of all Encumbrances whatsoever.

(b)    To Angela's Knowledge, the Angela Note was issued in compliance with applicable laws. To Angela's Knowledge, the Angela Note was not issued in violation of the organizational documents of the Company

## ARTICLE VI
## CLOSING DELIVERIES

**Section 6.1    Seller's Deliveries**.  At the Closing, Seller shall deliver to Buyer the following:

(a)    The assignment and assumption agreement, in the form attached hereto as Exhibit 6.1(a) (the "Assignment and Assumption"), executed by Seller.

(b)    The Promissory Note attached hereto as Exhibit 6.1(b) (the "Note"), executed by Seller.

(c)    The Security Agreement attached hereto as Exhibit 6.1(c) (the "Security Agreement") executed by Seller.

(d)    The Mutual Release and Indemnity Agreement attached hereto as Exhibit 6.1(d) (the "Release") executed by Seller and Kevin Nail, as a Manager of the Company.

(e)    Copies of the resignation or resignations of the Seller's representatives, if any, serving on the Board of Managers of the Company or as an officer of the Company, such resignation to be effective as of the date hereof.

(f)    A certificate of the Manager of Seller certifying as to the resolutions of the Manager of Seller, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby.

(g)    A certification meeting the requirements of Treasury Regulations Section 1.1446(f)-2(b)(2) to the effect that Seller is not a foreign person within the meaning of

4866-4144-9259.v4

Section 1446(f) or Section 1445 of the Internal Revenue Code of 1986, as amended ("Code") or a W-9 of Seller in lieu thereof.

(h)     The Waiver and Consent Agreement in the form attached hereto as Exhibit 6.1(h) (the "Waiver and Consent") executed by Seller.

(i)     The Contingent Release of Obligations in the form attached hereto as Exhibit 6.1(i) which releases and cancels all debt or other monetary obligations of the Company held by or owed to Seller or its affiliates or principals conditioned upon repayment in full of the Note.

(j)     assignment and assumption agreement in the form attached hereto as Exhibit 6.1(j) assigning the Angela Note to Buyer (the "Angela Note Assignment"), executed by Angela.

**Section 6.2     Buyer's Deliveries**.  At the Closing, Buyer shall deliver the following to Seller:

(a)     Cash by wire transfer in the amount of $1 million to Angela Kilic-Cave in full payment of the Angela Note.

(b)     The Assignment and Assumption, executed by Buyer.

(c)     The Note, executed by Buyer, EF Global, the Company, TTG RE, TTG Op, and LT.

(d)     The Security Agreement, executed by Buyer, EF Global, the Company, TTG RE, TTG Op, and LT.

(e)     The Deed of Trust attached hereto as Exhibit 6.2(e), executed by TTG Real RE.

(f)     The Release executed by the Company, EF Global, and Linda Thomas and David Woodard, as Managers of the Company and Linda Thomas individually as a Member of the Company.

(g)     A certificate of the Secretary or Assistant Secretary (or equivalent officer) of Buyer certifying as to (i) the resolutions of the board of directors (or equivalent managing body) of Buyer, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby, and (ii) the names and signatures of the officers of Buyer authorized to sign this Agreement and the documents to be delivered hereunder.

(h)     A certificate of the Secretary or Assistant Secretary (or equivalent officer) of EF Global certifying as to (i) the resolutions of the board of directors (or equivalent managing body) of EF Global, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby,

4866-4144-9259.v4

and (ii) the names and signatures of the officers of EF Global authorized to sign this Agreement and the documents to be delivered hereunder.

(i)  A certificate of the Secretary or Assistant Secretary (or equivalent officer) of the Company certifying as to (i) the resolutions of the board of Managers (or equivalent managing body) of the Company, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby, and (ii) the names and signatures of the officers of the Company authorized to sign this Agreement and the documents to be delivered hereunder.

(j)  A certificate of the Secretary or Assistant Secretary (or equivalent officer) of TTG RE certifying as to (i) the resolutions of the managers (or equivalent managing body) of TTG RE, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby, and (ii) the names and signatures of the officers of TTG RE authorized to sign this Agreement and the documents to be delivered hereunder.

(k)  A certificate of the Secretary or Assistant Secretary (or equivalent officer) of TTG Op certifying as to (i) the resolutions of the managers (or equivalent managing body) of TTG Op, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby, and (ii) the names and signatures of the officers of TTG Op authorized to sign this Agreement and the documents to be delivered hereunder.

(l)  A certificate of the Secretary or Assistant Secretary (or equivalent officer) of LT certifying as to (i) the resolutions of the board of directors (or equivalent managing body) of LT, duly adopted and in effect, which authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby, and (ii) the names and signatures of the officers of LT authorized to sign this Agreement and the documents to be delivered hereunder.

(m)  The Angela Note Assignment executed by Buyer and the Company.

(n)  The Waiver and Consent executed by the Company, and Linda Thomas.

## ARTICLE VII
## INDEMNIFICATION

**Section 7.1  Indemnification By Seller**.  Seller shall defend, indemnify, and hold harmless Buyer, its affiliates, and their respective members, managers, officers, and employees from and against:

(a)  all actual out-of-pocket losses, damages, liabilities, costs, or expenses, including reasonable attorneys' fees and disbursements (collectively, "Losses"), arising from or relating to any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement; or

4866-4144-9259.v4

(b)     all Losses arising from or relating to any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Seller pursuant to this Agreement.

**Section 7.2     Indemnification By Buyer**.  Buyer shall defend, indemnify, and hold harmless Seller, its affiliates, and their respective members, managers, officers, and employees from and against all Losses arising from or relating to:

(a)     any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement; or

(b)     any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Buyer pursuant to this Agreement.

**Section 7.3     Indemnification by EF Global**.  EF Global shall defend, indemnify, and hold harmless Seller and Angela, their respective affiliates, and their respective members, managers, officers, and employees from an against all Losses arising from or relating to:

(a)     any inaccuracy in or breach of any of the representations or warranties of EF Global contained in this Agreement; or

(b)     any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by EF Global pursuant to this Agreement.

**Section 7.4     Special Indemnification by Buyer, EF Global, the Company, TTG RE, TTG Op, and LT**.  Buyer, EF Global, the Company, TTG RE, TTG Op, and LT, jointly and severally, shall defend, indemnify, and hold harmless Angela, Seller, their respective affiliates, and their respective members, managers, officers, and employees from and against all actual out-of-pocket losses, damages, liabilities, costs, or expenses, including all attorneys' fees and disbursements (collectively, "**Special Losses**") arising from or relating to those certain contracts or personal guarantees entered into by Angela and/or Seller as described on Exhibit 7.4 (the "**Special Obligations**").

**Section 7.5     Indemnification Procedures**.  Whenever any claim shall arise for indemnification hereunder, the person or entity being indemnified hereunder (the "**Indemnified Party**") shall promptly provide written notice of such claim to the person or entity making the indemnification hereunder (the "**Indemnifying Party**").  The failure to give prompt notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party rights or defenses are prejudiced by reason of such failure.  In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a person or entity who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with its counsel.  The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense, subject to the Indemnifying Party's right to control the defense thereof.  If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action.  Neither Party shall settle any Action without the other Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

4866-4144-9259.v4

**Section 7.6    Payments**.  Once any amount of Losses or Special Losses, as may be applicable, is agreed to by the Indemnifying Party or finally adjudicated to be payable pursuant to this Article VII, the Indemnifying Party shall satisfy its obligations within 30 days of such agreement or final, non-appealable adjudication by wire transfer of immediately available funds. The parties hereto agree that should an Indemnifying Party not make full payment of any such obligations within such 30 day period, any amount payable shall accrue interest from and including the date of agreement of the Indemnifying Party or final, non-appealable adjudication to the date such payment has been made at a rate per annum equal to 6%.  Such interest shall be calculated daily on the basis of a 365 day year and the actual number of days elapsed, without compounding.

**Section 7.7    Tax Treatment of Indemnification Payments**.  All indemnification payments made under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for Tax purposes, unless otherwise required by Law.

**Section 7.8    Exclusive Remedies**.  The parties acknowledge and agree that following the closing, the provisions of this Article VII shall be their exclusive remedy for any and all claims relating to the subject matter of this Agreement or any of the other documents to be delivered hereunder, except for the claims arising from fraud, criminal activity, or willful misconduct on the part of a party hereto in connection with the transactions contemplated by this Agreement and claims for specific performance or other equitable remedies.

# ARTICLE VIII
# MISCELLANEOUS

**Section 8.1    Survival**.  The representations, warranties, covenants, and all rights of indemnification contained in this Agreement, shall survive the Closing and shall remain in full force and effect until the date that is two years from the Closing Date.  For the avoidance of doubt, the parties hereby agree and acknowledge that the survival period in this Section 8.1 is a contractual statute of limitations and any claim brought by any party with respect to any such representations, warranties, covenants or indemnification rights must be brought or filed prior to the expiration of the survival period set forth in this Section.  Notwithstanding the foregoing, any claims asserted in good faith with reasonable specificity (to the extent known at the time) and in writing by notice from the non-breaching party to the breaching party prior to the expiration date of such survival period shall not thereafter be barred by the expiration of such survival period and such claims shall survive until finally resolved.

**Section 8.2    Tax Matters**.  Buyer hereby covenants and agrees to issue or cause to be issued to Seller a K-1 for the Company's tax year 2021 within 30 days of Closing.

**Section 8.3    Releases of Special Obligations**.  Buyer, EF Global, the Company, TTG RE, TTG Op, and LT hereby covenant and agree to proceed expeditiously in good faith after Closing to obtain a release of Angela and Seller, as may be applicable, from any and all obligations, liabilities, or claims under the Special Obligations as soon as is reasonably practicable.

4866-4144-9259.v4

**Section 8.4    Expenses**.  Except as otherwise provided in Section 1.5, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 8.5    Further Assurances**.  Following the Closing, each of the parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

**Section 8.6    Notices**.  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the [third] day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 8.6):

| | |
|---|---|
| If to Seller or to Angela Kilic-Cave: | Dari Concepts, LLC<br>200 Continental Drive<br>Suite 401<br>Newark, DE 19713<br>Facsimile: (302) 543-2428<br>E-mail: angela@daricon.com<br>Attention: Angela Kilic-Cave |
| with a copy to: | Pillsbury Winthrop Shaw Pittman LLP<br>1650 Tysons Blvd., 14th Floor<br>McLean, VA 22102<br>Facsimile: 703-770-7901<br>E-mail: steven.meltzer@pillsburylaw.com<br>Attention: Steven L.  Meltzer |
| If to Buyer or to EF Global: | EF Global Corporation<br>1045 E McKellips Rd.<br>Mesa, AZ 85203E-mail:<br>efimrite@efglobal.com<br>Attention: Elroy Fimrite, President |
| with a copy to: | Charles Niehaus<br>Niehaus Kalas, Ltd.  Attorneys at Law<br>E-mail: niehaus@nkh.law |
| If to the Company, TTG RE, TTG Op, or LT | TieTek Global LLC<br>15814 Champion Forest Drive, |

11

4866-4144-9259.v4

Suite 302, Spring, Texas 77379
Email: lthomas@tietekglobal.com
Attention: Linda Thomas, President

**Section 8.7     Headings**.  The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 8.8     Severability**.  If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.  Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties hereto shall negotiate in good faith to modify the Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 8.9     Entire Agreement**.  This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.  In the event of any inconsistency between the statements in the body of this Agreement and those in documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 8.10     Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed.  No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 8.11     No Third-Party Beneficiaries**.  This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 8.12     Amendment and Modification**.  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

**Section 8.13     Waiver**.  No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving.  No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege

4866-4144-9259.v4

hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**Section 8.14    Governing Law**.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule.

**Section 8.15    Submission to Jurisdiction**.  Any legal suit, action, or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Texas in each case located in the city of Houston and county of Harris, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

**Section 8.16    Waiver of Jury Trial**.  Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

**Section 8.17    Specific Performance**.  The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.  Each party hereto (i) agrees that it shall not oppose the granting of such specific performance or relief and (ii) hereby irrevocably waives any requirements for the security or posting of any bond in connection with such relief.

**Section 8.18    Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

4866-4144-9259.v4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

Dari Concepts, LLC

By ⟨signature⟩

Name: Angela Kilic-Cave

Title: Manager

⟨signature⟩

Angela Kilic-Cave

EFG TieTek, LLC

By _____
Name: D. Elroy Fimrite
Title: President


EF Global Corporation

By _____
Name: D. Elroy Fimrite
Title: President

TieTek Global LLC

By *Linda Thomas*

Name: Linda Thomas
Title: President

TTG Real Estate LLC
By TieTek Global LLC, Manager

By *Linda Thomas*

Name: Linda Thomas
Title: President

TTG Operating LLC
By TieTek Global LLC, Manager

By *Linda Thomas*

Name: Linda Thomas
Title: President

LT Resources, Inc.

By *Linda Thomas*

Name: Linda Thomas
Title: President

**Exhibit 6.1(a)**
Assignment and Assumption Agreement
(See attached)

4866-4144-9259.v4

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Assignment") is made effective as August [●], 2022, by and between Dari Concepts, LLC, a Delaware limited liability company (the "Assignor"), EFG TieTek, LLC, a Delaware limited liability company (the "Assignee"), and TieTek Global LLC, a Texas limited liability company (the "Company").

<u>RECITAL</u>

Pursuant to that certain Membership Interest and Note Purchase Agreement of even date herewith by and among the Assignor, Assignee, the Company, EF Global Corporation, TTG Real Estate LLC, TTG Operating LLC, and LT Resources, Inc., the Assignor has agreed to transfer all of its right, title, and interest in and to 4,500,000 Class Units of the Company (the "Units") to the Assignee, and the Assignee has agreed to accept the Units from the Assignor.

<u>AGREEMENT</u>

IN CONSIDERATION of the recital set forth hereinabove, the mutual promises and covenants hereinafter contained, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged hereby, the parties to this Assignment, intending legally to be bound, hereby agree as follows:

1. The Assignor hereby assigns, transfers, conveys and sets over unto the Assignee all of the Assignor's right, title and interest in and to the Units;

2. The Assignee hereby accepts the assignment of the Units from the Assignor and assumes all of Assignor's right, title and interest in and to the Units;

3. The Company hereby agrees to and approves of such assignment from Assignor to Assignee.

*[The remainder of this page is intentionally left blank.]*

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement effective as of the day and year first above written.

ASSIGNOR:

DARI CONCEPTS, LLC

By:_____
    Name: Angela Kilic-Cave
    Title: Manager

ASSIGNEE:

EFG TIETEK, LLC

By:_____
    Name: D. Elroy Fimrite
    Title: President

COMPANY

TIETEK GLOBAL LLC

By:_____
    Name: Linda Thomas
    Title: President

**Exhibit 6.1(b)**
Promissory Note
(See attached)

4866-4144-9259.v4

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THIS NOTE MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE NOTE UNDER SAID ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED.**

**EFG TIETEK, LLC**

**EF GLOBAL CORPORATION**

**TIETEK GLOBAL LLC**

**TTG REAL ESTATE LLC**

**TTG OPERATING LLC**

**AND**

**LT RESOURCES, LLC**

**SECURED PROMISSORY NOTE**

$5,000,000                                                                                    August \_\_\_, 2022

FOR VALUE RECEIVED, EFG TieTek, LLC, a Delaware limited liability company ("EFG"), EF Global Corporation, a Delaware corporation ("EF Global"), TieTek Global LLC, a Texas limited liability company (the "Company"), TTG Real Estate LLC, a Texas limited liability company ("TTG RE"), TTG Operating LLC, a Texas limited liability company ("TTG Op"), and LT Resources, Inc., a Texas corporation ("LT" and together with EFG, EF Global, the Company, TTG RE, and TTG Op, the "Borrowers"), promise to pay to the order of Dari Concepts, LLC, a Delaware limited liability company (the "Holder"), in lawful money of the United States of America the principal sum of $5,000,000, or such lesser amount as shall equal the outstanding principal amount hereof, together with interest from the date of this Promissory Note (this "Note"). All unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable on the earliest of (i) one year from the date hereof, or (ii) when, upon or after the occurrence of an Event of Default (as defined below), such amounts are declared due and payable by the Holder or made automatically due and payable in accordance with the terms hereof (any such date, the "Maturity Date").

THE OBLIGATIONS DUE UNDER THIS NOTE ARE SECURED BY A SECURITY AGREEMENT (THE "SECURITY AGREEMENT") AND A DEED OF TRUST (THE "DEED OF TRUST") DATED AS OF THE DATE HEREOF (AND AS AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME) AND EXECUTED BY CERTAIN BORROWERS FOR THE BENEFIT OF THE HOLDER. ADDITIONAL RIGHTS OF THE HOLDER ARE SET FORTH IN THE SECURITY AGREEMENT AND THE DEED OF TRUST.

1.     ***Definitions***.  As used in this Note, the following capitalized terms have the following meanings:

(a)    "Event of Default" has the meaning given in Section 4 hereof.

(b)    "Lien" shall mean, with respect to any property, any security interest, mortgage, pledge, lien, claim, charge or other encumbrance in, of, or on such property or the income therefrom, including, without limitation, the interest of a vendor or lessor under a conditional sale agreement, capital lease or other title retention agreement, or any agreement to provide any of the foregoing.

(c)    "Obligations" shall mean and include all amounts due under this Note, the Security Agreement, and the Deed of Trust, all other amounts now or hereafter owed to the Holder by any or all of the Borrowers and all costs and expenses, including, without limitation, reasonable attorneys' fees and costs incurred in connection with actions relating to the Security Agreement, the Deed of Trust, or this Note.

(d)    "Person" shall mean and include an individual, a partnership, a corporation (including a business trust), a joint stock company, a limited liability company, an unincorporated association, a joint venture or other entity or a governmental authority.

(e)    "Securities Act" shall mean the Securities Act of 1933, as amended.

2.     ***Payments***.  Interest shall accrue at the rate of 6% per annum. On the Maturity Date, any remaining principal balance and all unpaid accrued interest thereon shall immediately become due and payable.  All payments made pursuant to this Note shall be made in lawful tender of the United States and shall be applied first to interest and then to principal. The obligations of the Borrowers to pay under this Note shall be joint and several.

3.     ***Prepayment***.  This Note may be prepaid in whole or in part at any time without notice or penalty.

4.     ***Events of Default***.  The occurrence of any of the following shall constitute an "Event of Default" under this Note and the Security Agreement:

(a)    *Failure to Pay.*  The Borrowers shall fail to pay (i) when due any principal or interest payment on the due date hereunder or (ii) any other payment required under the terms of this Note, the Security Agreement, or the Deed of Trust on the date due and such payment shall not have been made within ten (10) days of the Borrowers' receipt of the Holder's written notice to the Borrowers of such failure to pay; or

(b)    *Breaches of Covenants.*  The Borrowers shall fail to observe or perform any other covenant, obligation, condition or agreement contained in this Note, the Security Agreement, or the Deed of Trust and (i) such failure shall continue for thirty (30) days, or (ii) if such failure is not curable within such 30-day period, but is capable of cure within a reasonable period of time thereafter, either (A) the Borrowers shall fail to diligently pursue a cure or (B) the Borrowers shall fail to cure within a reasonable period of time; or

2

(c)     *Representations and Warranties.*   Any representation, warranty, certificate, or other statement (financial or otherwise) made or furnished by or on behalf of any Borrower to the Holder in this Note, the Security Agreement, or the Deed of Trust shall be false, incorrect, incomplete or misleading in any material respect when made or furnished; or

(d)     *Voluntary Bankruptcy or Insolvency Proceedings.*   Any Borrower shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) make a general assignment for the benefit of its or any of its creditors, (iii) be dissolved or liquidated, (iv) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it or (v) take any action for the purpose of effecting any of the foregoing; or

(e)     *Involuntary Bankruptcy or Insolvency Proceedings.*   Proceedings for the appointment of a receiver, trustee, liquidator or custodian of any Borrower or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to any Borrower or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within ninety (90) days of commencement;

(f)     *Liquidation or Dissolution*.   Any Borrower shall file for liquidation or dissolution; or

(g)     *Transaction Documents.*   This Note, the Security Agreement, or the Deed of Trust, or any material term thereof shall cease to be, or be asserted by any of the Borrowers not to be, a legal, valid and binding obligation of the Borrowers enforceable in accordance with its terms or any of the assets of the Company, or any of its subsidiaries, TTG RE, TTG Op, or LT, shall cease to be or shall not be valid perfected Liens or any of the Borrowers shall assert that such Liens are not valid and perfected Liens; provided that the Borrowers shall have thirty (30) days from the Borrowers' receipt of the Holder's written notice to the Borrowers of the occurrence of any such event to cure such default.

5.     ***Rights of Holder upon Default***.   Upon the occurrence or existence of any Event of Default (other than an Event of Default described in Sections 4(d), 4(e) or 4(f)) and at any time thereafter during the continuance of such Event of Default, the Holder may, by written notice to the Borrowers, declare all outstanding Obligations payable by the Borrowers hereunder to be immediately due and payable without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Security Agreement to the contrary notwithstanding.  Upon the occurrence or existence of any Event of Default described in Sections 4(d), 4(e) and 4(f), immediately and without notice, all outstanding Obligations payable by the Borrowers hereunder shall automatically become immediately due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Security Agreement to the

3

contrary notwithstanding. In addition to the foregoing remedies, upon the occurrence or existence of any Event of Default, the Holder may exercise any other right power or remedy granted to it by the Security Agreement or the Deed of Trust or otherwise permitted to it by law, either by suit in equity or by action at law, or both.

6. ***Successors and Assigns.*** Subject to the restrictions on transfer described in Section 7 below, the rights and obligations of the Borrowers and the Holder shall be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

7. ***Waiver and Amendment.*** Any provision of this Note may be amended, waived or modified upon the written consent of the Borrowers and the Holder.

8. ***Assignment by the Borrowers.*** Neither this Note nor any of the rights, interests or obligations hereunder may be assigned, by operation of law or otherwise, in whole or in part, by the Borrowers without the prior written consent of the Holder.

9. ***Notices.*** All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall be in writing and faxed, mailed or delivered to each party at the following addresses:

| | |
|---|---|
| if to the Borrowers, to: | EF Global Corporation<br>1045 E McKellips Rd.<br>Mesa, AZ 85203 |
| if to the Holder, to: | Dari Concepts, LLC<br>200 Continental Drive<br>Suite 401<br>Newark, DE 19713<br>Attn: Angela Kilic-Cave<br>Facsimile: (302) 543-2428<br>E-mail: angela@daricon.com |
| With a copy to: | Pillsbury Winthrop Shaw Pittman LLP<br>1650 Tysons Blvd., 14th Floor<br>McLean, VA 22102<br>Facsimile: 703-770-7901<br>E-mail: steven.meltzer@pillsburylaw.com<br>Attention: Steven L. Meltzer |

or at such other address or facsimile number as such party shall have furnished to the other party in writing. All such notices and communications will be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one (1) business day after being delivered by facsimile (with receipt of appropriate confirmation), (iv) one (1) business day after being

4858-8469-6619.v3

deposited with an overnight courier service of recognized standing or (v) four (4) days after being deposited in the U.S. mail, first class with postage prepaid.

10.     **Payment.**  Payment shall be made in lawful tender of the United States.

11.     **Default Rate; Usury.**  After the occurrence of an Event of Default, the Borrowers shall pay interest on the unpaid principal balance hereof at a rate per annum equal to twelve percent (12%).  In the event any interest is paid on this Note, which is deemed to be in excess of the then legal maximum rate, then that portion of the interest payment representing an amount in excess of the then legal maximum rate shall be deemed a payment of principal and applied against the principal of this Note.

12.     **Expenses; Waivers.**  After the occurrence of an Event of Default and so long as such Event of Default is continuing, if action is instituted to collect this Note, the Borrowers promise to pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, incurred in connection with such action.  The Borrowers hereby waive notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

13.     **Governing Law.**  This Note and all actions arising out of or in connection with this Note shall be governed by and construed in accordance with the laws of the State of Texas, without regard to the conflicts of law provisions of the State of Texas, or of any other state.

*[Signature Page Follows]*

4858-8469-6619.v3

The Borrowers have caused this Secured Promissory Note to be issued as of the date first written above.

**EFG TIETEK, LLC**

By: _____
Name: D. Elroy Fimrite
Title: President

**EF GLOBAL CORPORATION**

By: _____
Name: D. Elroy Fimrite
Title: President

[Signature Page to Secured Promissory Note]

**TIETEK GLOBAL LLC**

By: _____
Name: Linda Thomas
Title: President

**TTG REAL ESTATE LLC**

By: TIETEK GLOBAL, LLC, Manager

By: _____
Name: Linda Thomas
Title: President

**TTG OPERATING LLC**

By: TIETEK GLOBAL, LLC, Manager

By: _____
Name: Linda Thomas
Title: President

**LT RESOURCES, INC.**

By: _____
Name: Linda Thomas
Title: President

[Signature Page to Secured Promissory Note]

Acknowledged and Agreed:

**HOLDER**

DARI CONCEPTS, LLC

By: _____
Name: Angela Kilic-Cave
Title: Manager

[Signature Page to Secured Promissory Note]

**Exhibit 6.1(c)**
Security Agreement
(See attached)

4866-4144-9259.v4

# SECURITY AGREEMENT

This Security Agreement (this "Agreement") is made as of August [●], 2022 by and between TieTek Global LLC, a Texas limited liability company (the "Company"), the Company's subsidiaries, TTG Real Estate LLC, a Texas limited liability company, TTG Operating LLC, a Texas limited liability company, and LT Resources, Inc., a Texas corporation (collectively, the "Subsidiaries") EFG TieTek, LLC, a Delaware limited liability company ("EFG"), and EF Global, a Delaware corporation ("EF Global") (the Company, the Subsidiaries, EFG, and EF Global are herein referred to as "Makers"), and Dari Concepts, LLC, a Delaware limited liability company, (the "Holder") and Angela Kilic-Cave ("Angela")

WHEREAS, Makers issued to Holder a Secured Promissory Note (the "Note") in the principal amount of $5,000,000 for the release of certain obligations (set forth on Schedule A) (the "Schedule A Obligations") and sale of the Holder's equity in the Company .

WHEREAS, the Obligations of Makers under the Note are to be secured pursuant to this Agreement; and

WHEREAS, pursuant to Section 7.4 of that certain Membership Interest and Note Purchase Agreement of even date herewith which is incorporated herein by reference and which references certain Special Obligations (the "Special Obligations"), the Makers made certain covenants regarding the indemnification of Angela and Holder which such indemnification obligations are to be secured by this Agreement as more particularly set forth herein.

NOW, THEREFORE, in consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Definitions.  All terms defined in the Uniform Commercial Code as enacted in the State of Texas (the "Texas UCC") and used herein shall have the same definitions herein as specified therein.

2.      Grant of Security Interest.

(a)      Collateral.  The Company and the Subsidiaries hereby grant to the Holder and to Angela, to secure the performance in full of all of the Obligations (as defined in the Note, which shall include the Special Obligations), a security interest in all properties, assets and rights of the Company and the Subsidiaries, of whatever type and nature, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral"), including without limitation all of the following:

> All personal and fixture property of every kind and nature including, without limitation, all goods (including inventory, equipment and any accessions thereto), Vehicles, instruments (including promissory notes), documents, accounts, chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations, all tax refund claims,

license fees, all licenses, permits, agreements of any kind or nature pursuant to which the Makers possess, use or have authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use property (whether tangible or intangible) of the Makers, all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics, all patents, patent applications, trademarks, service marks, trademark and service mark applications, trade names, domain names, Trade Secrets Collateral, copyrights, copyright applications, and all reissues, divisions, continuations, continuations-in-part, extensions and renewals thereof, all rights to sue and recover for past infringement of patents, trademarks and copyrights, all engineering drawings, all rights to sue for past, present or future infringement or unconsented use thereof, all goodwill of or associated with the businesses now or hereafter conducted by the Makers, all licenses, permits, agreements of any kind or nature pursuant to which the Company and the Subsidiaries possess, use or have authority to possess or use intellectual property of others or others possess, use or have authority to possess or use intellectual property of the Makers, all general intangibles that constitute other intellectual property of the Makers, and all proceeds of any and all of the foregoing (including license royalties, rights to payment, accounts receivable and proceeds of infringement suits) and, to the extent not otherwise included, all payments under insurance (whether or not the Holder is the loss payee thereof) or any indemnity, warranty or guaranty payable by reason of loss or damage to or otherwise with respect to the foregoing Collateral.

All real estate (which lien will be also granted by a deed of trust contemporaneously submitted herewith)

When used herein, the term "Trade Secrets Collateral" shall mean all common law and statutory trade secrets and all other confidential, proprietary or useful information and all know how obtained by or used in or contemplated at any time for use in the business of the Company or the Subsidiaries, (all of the foregoing being collectively called a "Trade Secret"), including all documents and things embodying, incorporating or referring in any way to such Trade Secret, all Trade Secret licenses, and including the right to sue for and to enjoin and to collect damages for the actual or threatened misappropriation of any Trade Secret and for the breach or enforcement of any such Trade Secret license.

When used herein, the term "Vehicles" shall mean all cars, trucks, trailers, construction and earth moving equipment and other vehicles covered by a certificate of title law of any state.

(b)     Duration of Security Interest.  The security interest granted hereunder shall continue until the satisfaction and payment in full of the Obligations, whereupon such security interest shall automatically terminate without further action, and the Makers shall, at the Holder's and Angela's request and at the Holder's and Angela's sole cost and expense, execute such documents and take such actions as may be reasonably necessary to effect the release of the security interest granted hereunder, including duly executing and delivering termination statements for filing, or authorizing the Company or its agent to file such termination statements, in any jurisdiction..

2

3.     Title to Collateral, etc.  The Makers represent and warrant to the Holder and to Angela that the Makers are the owners of the Collateral.  None of the account debtors in respect of any accounts, chattel paper or general intangibles and none of the obligors in respect of any instruments included in the Collateral is a governmental authority subject to the Federal Assignment of Claims Act.

When used herein ("Lien" or "Liens") shall mean liens, security interests or other encumbrances, and "Permitted Liens" shall mean (a) Liens for taxes or other governmental charges not at the time delinquent or being contested in good faith, provided that adequate reserves for the payment thereof have been established in accordance with generally accepted accounting principles, (b) Liens of carriers, warehousemen, mechanics, materialmen, vendors, and landlords, in each case imposed by law, incurred in the ordinary course of business for sums not overdue or being contested in good faith, provided that adequate reserves for the payment thereof have been established in accordance with generally accepted accounting principles, (c) deposits under workers' compensation, unemployment insurance and social security laws or to secure the performance of bids, tenders, contracts (other than for the repayment of borrowed money) or leases, or to secure statutory obligations of surety or appeal bonds, (d) zoning restrictions, easements, rights-of-way, title irregularities and other similar encumbrances, which alone or in the aggregate are not substantial in amount and do not materially detract from the value of the property subject thereto or interfere with the ordinary conduct of the business of the Company or the Subsidiaries, (e) banker's Liens and similar Liens (including set-off rights) in respect of bank deposits under ordinary business checking accounts, (f) Liens in favor of customs and revenue authorities arising as a matter of law to secure payment of customs duties and in connection with the importation of goods in the ordinary course of the Company's business or any of the Subsidiaries' business, (g) purchase money Liens that will be discharged upon the Company's or any of the Subsidiaries' payment of the purchase price for the applicable property, to the extent such Liens relate solely to the property so purchased and (i) Liens in connection with any capitalized leases of the Makers.

4.     Continuous Perfection.  The Company's and the Subsidiaries' principal place of business in the United States is at 15814 Champion Forest Drive, Suite 302, Spring, Texas 77379.  The Company and each Subsidiary was formed under the laws of the State of Texas. None of the Company nor any of the Subsidiaries will change such address, jurisdiction of incorporation, name, or the identity or corporate structure of the Company or any Subsidiary in any manner, without providing at least 30 days' prior written notice to the Holder and to Angela.

5.     No Liens.  The Company and the Subsidiaries shall defend the Collateral from and against all claims and demands of all persons at any time claiming the Collateral or any interests therein adverse to the Holder or to Angela.  The Company and none of the Subsidiaries shall create or suffer to exist a Lien in the Collateral in favor of any person other than the Holder and Angela, other than Permitted Liens.

6.     No Transfers.  The Company and none of the Subsidiaries will sell, assign or otherwise transfer the Collateral or any interest therein; provided, however, that as long as no Event of Default (as defined below) has occurred and is continuing, the Company and each of the Subsidiaries may, in arm's length transactions, in the ordinary course of its business for

4856-7458-6411.v6

adequate consideration (i) sell or dispose of items of inventory, and (ii) grant non-exclusive licenses and similar arrangements for use of its intellectual property.

7. <u>Maintenance of Insurance</u>. The Company and each of the Subsidiaries, as applicable, will maintain with financially sound and reputable insurers, insurance with respect to its properties, assets, realty, fixtures, Collateral and business against such casualties and contingencies and in such amounts as shall be in accordance with general practices of businesses engaged in similar activities. Without limiting the foregoing, the Company and the Subsidiaries will (i) maintain all such workers' compensation or similar insurance as may be required by law, and (ii) maintain, in amounts and with deductibles equal to those generally maintained by businesses engaged in similar activities in similar geographic areas, general public liability insurance against claims of bodily injury, death or property damage occurring, on, in or about the properties of the Makers, and business interruption insurance.

8. <u>Maintenance of Collateral; Compliance with Law</u>. The Company and the Subsidiaries will not permit the Collateral to be used in violation of law or any policy of insurance thereon. The Company and the Subsidiaries will pay promptly when due all taxes (or timely file for an extension to pay such taxes, assessments, governmental charges or levies), assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of such Collateral or incurred in connection with this Agreement, except for such taxes being contested by the Company in good faith for which adequate reserves have been established.

9. <u>Expenses; Duties</u>.

(a) <u>Expenses Incurred by Holder or Angela</u>. In their reasonable discretion, the Holder and/or Angela may discharge taxes and other encumbrances at any time levied or placed on any of the Collateral and/or real or personal property of Maker, make repairs thereto, insure, and/or pay any charges or necessary filing fees. The Makers shall reimburse the Holder and/or Angela, as may be applicable, promptly on demand for any and all reasonable expenditures so made. The Holder and Angela shall have no obligation to the Makers to make any such expenditures, nor shall the making thereof relieve the Makers of any default.

(b) <u>Holder's and Angela's Obligations and Duties</u>. Notwithstanding anything to the contrary contained in this Agreement, the Company and each of the Subsidiaries shall remain liable under each contract or agreement comprised in the Collateral, and the Holder and Angela shall not have any obligation or liability under any such contract or agreement by reason of or arising out of this Agreement or the receipt by the Holder or Angela of any payment relating to any of the Collateral, nor shall the Holder or Angela be obligated in any manner to perform any of the obligations of the Company or the Subsidiaries under or pursuant to any such contract or agreement, to make inquiry as to the nature or sufficiency of any payment received by the Holder or Angela in respect of the Collateral or as to the sufficiency of any performance by any party under any such contract or agreement, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to the Holder or to Angela or to which the Holder or Angela may be entitled at any time or times.

4856-7458-6411.v6

10.    <u>Notification to Account Debtors and Other Obligors</u>.  Upon occurrence of an Event of Default (as defined in the Note) that is continuing, the Company shall, at the request of the Holder and/or Angela, notify account debtors on accounts and general intangibles of the Company and the Subsidiaries and obligors on instruments for which the Company or any Subsidiary is an obligee of the security interest of the Holder or Angela in any account, general intangible or instrument and that payment thereof is to be made directly to the Holder or to Angela, as may be applicable, and the Holder or Angela may, without notice to or demand upon the Company or any Subsidiary, so notify account debtors and obligors.  After the making of such a request or the giving of any such notification, the Company shall hold any proceeds of collection of accounts, general intangibles and instruments received by the Makers as trustee for the Holder and Angela without commingling the same with other funds of the Company or the Subsidiaries and shall turn the same over to the Holder and to Angela in the identical form received, together with any necessary endorsements or assignments.

11.    <u>Further Assurances</u>. The Company and each of the Subsidiaries, at their own expense, shall do, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as the Holder or Angela may reasonably require more completely to vest in and assure to the Holder or Angela their rights hereunder or in any of the Collateral, including, without limitation, executing, delivering and, where appropriate, filing financing statements and continuation statements under the Uniform Commercial Code.

12.    <u>Power of Attorney</u>.

(a)    <u>Appointment and Powers of Holder and Angela</u>.  The Company and each of the Subsidiaries hereby irrevocably constitutes and appoints the Holder and Angela and any agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of the Company or that of the Subsidiaries or in the Holder's or Angela's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or reasonably desirable to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorneys the power and right, on behalf of the Company and the Subsidiaries, without notice to or assent by the Company and the Subsidiaries, to do the following:

(i)    Upon the occurrence of an Event of Default:  (A) to sell, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Collateral in such manner as is consistent with Texas law and as fully and completely as though the Holder or Angela was the absolute owner thereof for all purposes, and (B) to do at the Company's expense, at any time, or from time to time, all acts and things which the Holder or Angela deems necessary to protect, preserve or realize upon the Collateral and the Holder's and Angela's security interests therein, in order to effect the intent of this Agreement, all as fully and effectively as the Makers might do, including, without limitation, in respect of either (A) or (B) above, (I) the filing and prosecuting of registration and transfer applications with the appropriate federal or local agencies or authorities with respect to trademarks, copyrights and patentable inventions and processes, and (II) upon written notice to the Company, the exercise of voting rights with respect to voting securities, which rights may be exercised, if the Holder or Angela so

5

elects, with a view to causing the liquidation in a commercially reasonable manner of assets of the issuer of any such securities, and (III) the execution, delivery and recording, in connection with any sale or other disposition of any Collateral, of the endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral; and

        (ii)    to file such financing statements, amendments, terminations, or renewals with respect hereto, or a photocopy of this Agreement in substitution for a financing statement, amendment, or renewal, as the Holder or Angela may reasonably deem appropriate.

        (b)    <u>No Duty on Holder or Angela</u>.  The powers conferred on the Holder and Angela hereunder are solely to protect their interests in the Collateral and shall not impose any duty upon the Holder or Angela to exercise any such powers.  The Holder and Angela shall be accountable only for the amounts that the Holder or Angela actually receives as a result of the exercise of such powers and neither such Holder or Angela nor any acting on the Holder's behalf or Angela's behalf shall be responsible to the Makers for any act or failure to act, except for the Holder's or Angela's willful misconduct.

        13.    <u>Events of Default; Remedies</u>.  Upon the occurrence of an Event of Default and at any time thereafter during the continuance of an Event of Default, the Holder or Angela may exercise any one or more of the following rights and remedies: (i) declare all Obligations to be immediately due and payable, and the same shall thereupon be immediately due and payable, without presentment or other notice or demand; (ii) exercise and enforce any or all rights and remedies available upon default to a secured party under the Texas UCC, including, but not limited to, the right to take possession of any Collateral, proceeding without judicial process or by judicial process (without a prior hearing or notice thereof, which the Company and each of the Subsidiaries hereby expressly waive), and the right to sell, lease or otherwise dispose of any or all of the Collateral, and in connection therewith, the Holder or Angela may require the Company and the Subsidiaries to make the Collateral available to the Holder or to Angela, as may be applicable at a place to be designated by the Holder or Angela, and if notice to the Company of any intended disposition of the Collateral or any other intended action is required by law in a particular instance, such notice shall be deemed commercially reasonable if given (in the manner specified herein) at least five days prior to the date of intended disposition or other action; and (iii) exercise or enforce any or all other rights or remedies available to the Holder or Angela by law or agreement against the Collateral, against the Company or against any other person or property.  Without limiting the foregoing, the Company waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of the Holder's or Angela's rights hereunder, including, without limitation, the Holder's and Angela's right following an Event of Default to take immediate possession of the Collateral and to exercise their rights with respect thereto.

        14.    <u>Waiver, etc</u>. The Makers waive demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description.  With respect to the Obligations and the Collateral, the Makers assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or

6

release of or failure to perfect any security interest in any Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the settlement, compromising or adjusting of any thereof, all in such manner and at such time or times as the Holder or Angela may deem advisable. Neither Holder nor Angela shall have any duty as to the collection or protection of the Collateral or any income thereon, nor as to the preservation of rights against prior parties. Holder and Angela shall not be deemed to have waived any of their rights upon or under the Obligations or the Collateral unless such waiver shall be in writing and signed by the Holder and by Angela. No delay or omission on the part of the Holder or Angela in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to or waiver of any right on any future occasion. All rights and remedies of the Holder or Angela with respect to the Obligations or the Collateral, whether evidenced hereby or by any other instrument or papers, shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as the Holder deem advisable.

15.     Marshalling. Neither the Holder nor Angela shall be required to marshal any present or future collateral security (including but not limited to this Agreement and the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights, however existing or arising. To the extent that it lawfully may, the Makers hereby agree that they will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Holder's and Angela's rights under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, the Makers hereby irrevocably waive the benefits of all such laws.

16.     Proceeds of Dispositions; Expenses. The Company shall pay to the Holder on demand any and all costs and expenses, including reasonable attorneys' fees and disbursements and other legal expenses, incurred or paid by the Holder or Angela in protecting, preserving or enforcing the rights under or in respect of any Obligation, Angela Obligation, or any Collateral. After deducting all such costs and expenses, the residue of any proceeds of collection or sale of the Obligations or Collateral shall, to the extent actually received in cash, be applied to the payment of the Obligations in such order or preference as the Holder and Angela may determine, proper allowance and provision being made for any Obligations not then due. Upon the final payment and satisfaction in full of all of the Obligations and after making any payments required by the Texas UCC, any excess shall be delivered to the Company, and the Company shall remain liable for any deficiency in the payment of the Obligations.

17.     Forgiveness of Schedule A Obligations. EF Global and the Buyer have agreed to issue to Holder the Note for the purchase of the Holder's equity in the Company. In exchange for Holder's agreement to forgive the Schedule A Obligations, the Company has entered into this Security Agreement. The Holder's forgiveness of the Schedule A Obligations is conditioned upon the payment in full of the Note and, if an Event of Default occurs and is not waived or cured, Holder retains a claim for monies advanced as Schedule A Obligations (less any payment actually received).

4856-7458-6411.v6

18.    <u>Miscellaneous</u>.

(a)    The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties.  Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

(b)    This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law.

(c)    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

(d)    The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(e)    Any notice required or permitted by this Agreement shall be in writing and shall be deemed sufficient upon delivery, when delivered personally or by overnight courier or sent by fax (upon customary confirmation of receipt), or five days after being deposited in the U.S. mail, as certified mail, with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page hereto, or as subsequently modified by written notice.

(f)    Any term of this Agreement may be amended or waived only with the written consent of the parties hereto.

(g)    If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties shall renegotiate such provision in good faith.  If the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

(h)    No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring.  Any waiver, permit, consent or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing.  All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

4856-7458-6411.v6

(i)     This Agreement, and the documents referred to herein constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements relating to the subject matter hereof existing between the parties hereto are expressly canceled.

[SIGNATURE PAGES FOLLOW]

4856-7458-6411.v6

The parties have executed this Security Agreement as of the date first written above.

**THE COMPANY:**

**TIETEK GLOBAL LLC**

By: _____
Name:  Linda Thomas
Title:   President
Address:  15814 Champion Forest Drive,
Suite 302, Spring, Texas 77379

**SUBSIDIARIES:**

**TTG OPERATING LLC**

By: TIETEK GLOBAL LLC, Manager

By: _____
Name: Linda Thomas
Title: President
Address:  15814 Champion Forest Drive,
Suite 302, Spring, Texas 77379

**TTG REAL ESTATE LLC**

By: TIETEK GLOBAL LLC, Manager

By: _____
Name: Linda Thomas
Title: President
15814 Champion Forest Drive,
Suite 302, Spring, Texas 77379

*[Signature page to Security Agreement]*

**LT RESOURCES, INC.**


By: _____
Name: Linda Thomas
Title: President
15814 Champion Forest Drive,
Suite 302, Spring, Texas 77379


**HOLDER:**

**DARI CONCEPTS, LLC**


By: _____
Name: Angela Kilic-Cave
Title: Manager
Address: 200 Continental Drive, Suite 401
Newark, DE 19713

**ANGELA:**


_____
Angela Kilic-Cave
Address: 200 Continental Drive, Suite 401
Newark, DE 19713


*[Signature page to Security Agreement]*


11

4856-7458-6411.v6

**BUYER:**

**EFG TIETEK, LLC**

By: _____
Name: D. Elroy Fimrite
Title: President
Address: 1045 E McKellips Rd.
Mesa, AZ 85203

**EF GLOBAL CORPORATION**

By: _____
Name: D. Elroy Fimrite
Title: President
Address: 1045 E McKellips Rd.
Mesa, AZ 85203

*[Signature page to Security Agreement]*

4856-7458-6411.v6

**Schedule A**

1.  Loan of $20,000 on February 11, 2022, made by Dari Concepts, LLC for the benefit of TieTek Global, LLC not evidenced by a promissory note

2.  Promissory Note dated February 18, 2022 in the amount of $65,000.00 made by TieTek Global, LLC, of which $50,000 has been pre-paid

3.  Promissory Note dated March 10, 2022 in the amount of $96,500.00 made by TieTek Global, LLC

4.  Promissory Note dated May 11, 2022 in the amount of $4,350.00 made by TieTek Global, LLC

5.  Promissory Note dated May 13, 2022 in the amount of $23,500.00 made by TieTek Global, LLC

6.  Promissory Note dated May 31, 2022 in the amount of $90,207.61 made by TieTek Global, LLC

7. Promissory Note dated May 31, 2022 in the amount of $10,448.50 made by TieTek Global, LLC

8.  Promissory Note dated June 9, 2022 in the amount of $19,620.09 made by TieTek Global, LLC

9.  Promissory Note dated July 11, 2022 in the amount of $119,865.96 made by TieTek Global, LLC

10. Loan of $8,737.40 on July 20, 2022, made by Dari Concepts, LLC for the benefit of TieTek Global, LLC not evidenced by a promissory note

4856-7458-6411.v6

**Exhibit 6.1(d)**
Mutual Release
(See attached)

4866-4144-9259.v4

**Exhibit 6.1(d)**
**of the**
**Membership Interest and Note Purchase Agreement**

**Mutual Release and Indemnity Agreement**

This Mutual Release and Indemnity Agreement (*"Release"*) is entered into as of August [●], 2022, (the *"Effective Date"*) by and among each and all of the undersigned parties to this Release.

1.  DARI CONCEPTS, LLC, ("Dari") a Delaware limited liability company is the holder of 100% of the Class A units of TieTek Global LLC, a Texas limited liability company (the "*Company*"), pursuant to the Second Amended and Restated Operating Agreement of the Company. The closing deliverables of the Membership Interest and Note Purchase Agreement by and between Dari ("Seller"), EFG TieTek, LLC ("Buyer"), EF Global Corporation, the Company, TTG Real Estate LLC, TTG Operating LLC, LT Resources, Inc. and Angela Kilic-Cave includes specifically cash in the amount of $1 million to Angela Kilic-Cave and a promissory note in the amount of $5 million to Dari.

2.  (A) each of (i) Dari, (ii) Kevin Nail, as a Manager of the Company, and (iii) Angela Kilic-Cave, individually (each a *"Dari Party"* and collectively the *"Dari Parties"*) and (B) each of (i) Linda Thomas, individually, (ii) Linda Thomas as an officer, Manager, and Member of the Company, (iii) David Woodard, as a Manager of the Company, and (iv) the Company and each of its subsidiaries TTG Operating LLC, TTG Real Estate LLC, and LT Resources, Inc. (each, a *"TieTek Party"* and collectively the *"TieTek Parties"*) for good and valuable consideration, including, without limitation, the execution of this Release, and the releases provided by each party to the others hereunder, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound, hereby agree as follows:

    (a)  Subject to the provisions of Sections 2(h) and 2(i) below, each Dari Party, for themselves, itself, and, as applicable, for its officers, managers, directors, members, shareholders, partners, predecessors, attorneys, successors and assigns, hereby forever releases and discharges each TieTek Party, and as applicable, each and every current and former member, owner, stockholder, director, manager, officer, employee, agents, partner, predecessor, attorneys, successors and assigns of the foregoing (each, individually a *"TieTek Released Party"* and collectively, the *"TieTek Released Parties"*), from any and all Claims (as defined below), which each such Dari Party now has, has ever had or may hereafter have against each TieTek Released Party arising as a result of the TieTek Released Parties having an interest in the Company or any of its subsidiaries, TTG Operating LLC, TTG Real Estate LLC, and LT Resources, Inc. (collectively, the "*Business*") whether such TieTek Released Party was a member, service provider, consultant, officer, director, or manager of the Business prior to the Effective Date; provided, however, that nothing contained herein shall operate to release, alter, amend, or modify any obligations of any applicable TieTek Released Party arising under this Release; or the Membership Interest and Note Purchase Agreement to which this Mutual Release and Indemnity

is an exhibit or to such other agreement which is an exhibit or a part of the Membership Interest and Note Purchase Agreement; and

(b)     Subject to the provisions of Section 2(h) below, each TieTek Party, for themselves, itself, and, as applicable, for its officers, managers, directors, members, shareholders, partners, predecessors, attorneys, successors and assigns, hereby forever releases and discharges each Dari Party, and as applicable, each and every current and former member, owner, stockholder, director, manager, officer, employee, agents, partner, predecessor, attorneys, successors and assigns of the foregoing (each, individually a *"Dari Released Party"* and collectively, the *"Dari Released Parties"*), from any and all Claims (as defined below), which each such TieTek Party now has, has ever had or may hereafter have against each Dari Released Party arising as a result of the Dari Released Parties having an interest in the Business whether such Dari Released Party was a member, service provider, consultant, officer, director, or manager of the Business prior to the Effective Date; <u>provided</u>, <u>however</u>, that nothing contained herein shall operate to release, alter, amend, or modify any obligations of any applicable Dari Released Party arising under this Release; or the Membership Interest and Note Purchase Agreement to which this Mutual Release and Indemnity is an exhibit or to such other agreement which is an exhibit or a part of the Membership Interest and Note Purchase Agreement; and

(c)     In consideration for Dari and Angela Kilic-Cave entering into the Membership Interest and Note Purchase Agreement, EF Global Corporation hereby agrees to fully indemnify and hold harmless Dari, Kevin Nail, and Angela Kilic-Cave from and against any and all Claims which arise from or are related to Dari's, Kevin Nail's, or Angela Kilic-Cave's association with the Business of any kind whatsoever; and

(d)     for purposes of this Release, the term *"Claims"* shall mean any and all claims, charges, demands, losses, liabilities, obligations, promises, covenants, agreements, damages (including, without limitation, punitive damages), actions, causes of action, suits, judgments, rights, debts, contracts, fees (including, without limitation attorneys' fees), costs and expenses, whether asserted or unasserted, known or unknown, or foreseen or unforeseen, and whether or not named or referred to herein, in contract, in tort, or under any statute, rule, regulation, ordinance, decision or order enacted, promulgated or issued by any local, state or federal authority, court or any arbitrator, arbitration panel or tribunal or similar body; and

(e)     for purposes of this Release, the term "*Person*") shall mean an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any other business entity, or a governmental authority (or any department, agency, or political subdivision thereof); and

(f)     each Dari Party hereby irrevocably covenants to refrain from directly or indirectly asserting any claim or demand, or commencing, instituting or causing to be commenced, any proceeding of any kind against any TieTek Released Party based upon any matter purported to be released hereby and each TieTek Party hereby irrevocably covenants to refrain from directly or indirectly asserting any claim or demand, or commencing, instituting or causing to be commenced, any proceeding of any kind against any Dari Released Party based upon any matter purported to be released hereby; and

(g)     It is agreed that, except as specifically provided in Section 2(h) below, the Claims hereby released, discharged and waived include, but are not limited to, all Claims, civil or criminal, in law or in equity, for breach of contract (express or implied), breach or violation of duty (fiduciary, professional or other), negligent or other misrepresentation, inducement, reliance, unlawful concerted action or conspiracy, aiding or abetting, and/or primary or secondary liability or responsibility or direct or indirect or vicarious liability or responsibility; and

(h)     nothing herein releases, discharges or waives, or shall be deemed to release, discharge or waive, any claim for breach or nonperformance of any of the terms of this Release or the Membership Interest and Note Purchase Agreement and the exhibits thereto to which this Mutual Agreement is an exhibit.

(i)     Notwithstanding the provisions of Section 2(a) hereof, the provisions of Section 2(a) shall not apply in the event that any Person who is not a Dari Party or a TieTek Party shall assert any Claims against any Dari Party as a result of such Dari Party having an interest in the Business whether such Dari Party was a member, service provider, consultant, officer, director, or manager of the Business.  In such an event, the Dari Party who is subject to the Claims of such third-party shall have all rights and remedies available to such Dari Party to pursue any claims for contribution or indemnity or any other remedy at law or in equity against any TieTek Party as it relates to such third-party Claims; and

(j)     The Releasing Parties understand and acknowledge that this Release is given as part of the deliverables for the closing of the Membership Interest and Note Purchase Agreement and a settlement and resolution of existing and potential disputes and that none of the Dari Released Parties nor any of the TieTek Released Parties has admitted to or admits any wrongdoing or liability whatsoever; and

(k)     If any provision of this Release is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Release will remain in full force and effect. Any provision of this Release held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

3.     This Release may not be modified, amended, supplemented, canceled or discharged, except by written instrument executed by the party, or parties, against whose interest any of the foregoing shall operate.

4.     This Release may be executed by the parties hereto in counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument.

5.     This Release shall be governed by, interpreted and construed in accordance with the laws of the State of Texas without regard to conflict or choice of law provisions thereof.

IN WITNESS WHEREOF, each of the parties hereto has executed this Mutual Release as of the date first above written.

Signature Page to follow:

TIETEK GLOBAL LLC,
a Texas limited liability company


By: _____
Name: Linda Thomas
Title: President


_____

Linda Thomas, as an officer, Member and Manager of TIETEK GLOBAL LLC and Affiliates


_____

Linda Thomas, individually


[Signature Page to Mutual Release and Indemnity Agreement

DARI CONCEPTS, LLC,
a Delaware limited liability company


By: _____
Name: Angela Kilic-Cave
Title: Manager



_____
Angela Kilic-Cave, individually

[Signature Page to Mutual Release and Indemnity Agreement

EF GLOBAL CORPORATION

By: _____
     D. Elroy Fimrite, President

[Signature Page to Mutual Release and Indemnity Agreement

_____

Kevin Nail, as Manager of TIETEK
GLOBAL LLC

[Signature Page to Mutual Release and Indemnity Agreement

_____

David Woodard, as Manager of
TIETEK GLOBAL LLC

[Signature Page to Mutual Release and Indemnity Agreement

**Exhibit 6.1(h)**
Waiver and Consent Agreement
(See attached)

# WAIVER/CONSENT

This Waiver/Consent ("**Waiver/Consent**"), dated as of August [●], 2022, is made by TieTek Global LLC, a Texas limited liability company (the "**Company**"), Linda Thomas ("**Thomas**"), a Member of the Company and Dari Concepts, LLC, a Delaware limited liability company ("**Dari**") a Member of the Company. The Company, Thomas and Dari are cumulatively referred to herein as the "**Parties**").

WHEREAS, Thomas and Dari are the only members of the Company. Dari contemplates selling its membership interest in the Company pursuant to a Membership Interests and Note Purchase Agreement ("**Purchase Agreement**") to which this Waiver/Consent is a closing deliverable. Certain rights, duties and obligations of Thomas and Dari are controlled by a Second Amended and Restated Company Agreement (the "**LLC Agreement**"). Pursuant to the LLC Agreement the transaction contemplated under the Purchase Agreement is subject to certain rights, options, transfer restrictions and other terms and conditions of the LLC Agreement.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      The facts stated in the premises above are a part of this Agreement.

2.      <u>Definitions</u>. Capitalized terms used and not defined in this Waiver/Consent shall have the respective meanings given them in the LLC Agreement.

3.      <u>Waiver/Consent</u>. As of the date hereof all restrictions on transfer of the Membership Interests of Dari pursuant to the Purchase Agreement are hereby waived by Dari, Thomas and the Company, including but not limited to any and all restrictions on the sale of a Membership Interest, tag-along rights identified in Section 8.06 of the LLC Agreement, drag along rights identified in Section 8.07 of the LLC Agreement, preemptive rights identified in Section 8.13 of the LLC Agreement, voting rights, distribution rights, or Member rights, which may be deemed as restricting or prohibiting the transfer of LLC Units from Dari to the buyer under the Purchase Agreement. Such waiver is to permit the consummation of the sale from Dari to Buyer under the Purchase Agreement. The Company and Thomas hereby consent to such sale. Should the Purchase Agreement not close within 30 days, this Waiver/Consent is hereby cancelled.

4.     The terms of this Waiver/Consent is intended by the undersigned to comply with the provisions of the LLC Agreement and specifically <u>Section 13.02 Waivers</u> of the LLC Agreement.  This Waiver/Consent shall become concurrent with the date of closing of the Purchase Agreement.

5.     <u>Cessation of Dari as an Owner and a Party to the LLC Agreement</u>.  Effective as of the sale, Dari shall cease to be a party to the LLC agreement and shall have no further rights or obligations whatsoever under the LLC Agreement or otherwise as an owner of the Company.

6.     <u>Cessation of Kevin Nail as a Manager of the Company</u>:  Effective as of the sale, Kevin Nail shall resign as a Manager of the Board (as defined in the LLC Agreement) of the Company and such resignation is hereby accepted conditional upon the Closing of the sale.  The parties hereto, as Members of the Company, hereby ratify and approve of any and all actions or omissions of Kevin Nail from the time he was appointed as a Manager to the time of his resignation.

7.     <u>Successors and Assigns</u>. This Waiver/Consent shall inure to the benefit of and be binding upon the parties hereto and each of their respective successors and assigns.

8.     <u>Governing Law</u>. This Waiver/Consent shall be governed by, and construed in accordance with, the laws of the State of Texas.

9.     <u>Counterparts</u>. This Waiver/Consent may be executed in any number of counterparts, all of which shall constitute one and the same agreement, and any party hereto may execute this Waiver/Consent by signing and delivering one or more counterparts. Delivery of an executed counterpart of this Waiver/Consent electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Waiver/Consent.

[SIGNATURE PAGE FOLLOWS]

4882-9177-7323.v3

IN WITNESS WHEREOF, the parties hereto have executed this Waiver/Consent as of the date first above written.

TieTek Global LLC

By_____
Name: Linda Thomas, President

_____
Linda Thomas, Personally

[Signature Page to Waiver/Consent]

4882-9177-7323.v3

Dari Concepts, LLC

By_____
Name: Angela Kilic-Cave
Title: Manager

[Signature Page to Waiver/Consent]

4882-9177-7323.v3

**Exhibit 6.1(i)**
Contingent Release of Obligations
(See attached)

4866-4144-9259.v4

# CONTINGENT RELEASE OF OBLIGATIONS

This Contingent Release of Obligations (this "**Agreement**"), dated as of August [●], 2022, is made by Dari Concepts, LLC, a Delaware limited liability company ("**Dari**"), TieTek Global LLC, a Texas limited liability company (the "**Company**"), TTG Real Estate LLC, a Texas limited liability company, TTG Operations LLC, a Texas limited liability company, and LT Resources, Inc., a Texas corporation.

WHEREAS, Dari contemplates selling its membership interests in the Company pursuant to a Membership Interest and Note Purchase Agreement ("**Purchase Agreement**") to which this Contingent Release of Obligations is a closing deliverable;

WHEREAS, pursuant to the Purchase Agreement, EFG TieTek, LLC, a Delaware limited liability company will give a promissory note to Dari for $5 million payable in one year (the "**Note**") in consideration of the purchase of Dari's membership interests in the Company;

WHEREAS, Dari has loaned certain funds to or for the benefit of the Company and/or its subsidiaries, TTG Real Estate LLC, TTG Operating LLC, and LT Resources, Inc. (collectively, the "**Subsidiaries**") as more particularly set forth on Schedule A hereto (the "**Schedule A Obligations**"); and

WHEREAS, in consideration for the payment of the Note, Dari wishes to conditionally release all of the Schedule A Obligations and forebear the collection thereof contingent upon the timely repayment in full of the Note.

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Dari hereby agrees as follows:

1.  The facts stated in the premises above are a part of this Agreement.

2.  <u>Contingent Release of Schedule A Obligations</u>. As of the date hereof, Dari hereby conditionally releases the Company and the Subsidiaries from any and all obligations or liabilities arising from the Schedule A Obligations; provided, however, that such release shall be conditional that there not be an Event of Default (as defined in the Note) under the Note for any reason whatsoever. Should an Event of Default under the Note occur, this release shall no longer be of any force or effect, and Dari hereby reserves any and all

rights contractual or otherwise, at law or in equity, to pursue claims against the Company and/or the Subsidiaries for repayment in full of the Schedule A Obligations, whether or not any such Schedule A Obligation is evidenced by a written promissory note.

3.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and be binding upon the parties hereto and each of their respective successors and assigns.

4.    <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas.


[SIGNATURE PAGE FOLLOWS]

4860-5981-8540.v2

IN WITNESS WHEREOF, the parties below have executed this Agreement as of the date first above written.

Dari Concepts, LLC

By_____
Name: Angela Kilic-Cave
Title: Manager

TieTek Global LLC

By_____
Name: Linda Thomas
Title: President

TTG Real Estate LLC
By: TieTek Global LLC, Manager

By_____
Name: Linda Thomas
Title: President

TTG Operating LLC
By: TieTek Global LLC, Manager

By_____
Name: Linda Thomas
Title: President

LT Resources, Inc.

By_____
Name: Linda Thomas
Title: President

[Signature Page to Contingent Release of Obligations Continued]

Schedule A

1.  Loan of $20,000 on February 11, 2022, made by Dari Concepts, LLC for the benefit of TieTek Global, LLC not evidenced by a promissory note

2.  Promissory Note dated February 18, 2022 in the amount of $65,000.00 made by TieTek Global, LLC, of which $50,000 has been pre-paid

3.  Promissory Note dated March 10, 2022 in the amount of $96,500.00 made by TieTek Global, LLC

4.  Promissory Note dated May 11, 2022 in the amount of $4,350.00 made by TieTek Global, LLC

5.  Promissory Note dated May 13, 2022 in the amount of $23,500.00 made by TieTek Global, LLC

6.  Promissory Note dated May 31, 2022 in the amount of $90,207.61 made by TieTek Global, LLC

7. Promissory Note dated May 31, 2022 in the amount of $10,448.50 made by TieTek Global, LLC

8.  Promissory Note dated June 9, 2022 in the amount of $19,620.09 made by TieTek Global, LLC

9.  Promissory Note dated July 11, 2022 in the amount of $119,865.96 made by TieTek Global, LLC

10. Loan of $8,737.40 on July 20, 2022, made by Dari Concepts, LLC for the benefit of TieTek Global, LLC not evidenced by a promissory note

4860-5981-8540.v2

**Exhibit 6.1(j)**
Angela Note Assignment
(See attached)

4866-4144-9259.v4

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Assignment") is made effective as August [●], 2022, by and between Angela Kilic-Cave (the "Assignor"), EFG TieTek, LLC, a Delaware limited liability company (the "Assignee"), and TieTek Global LLC, a Texas limited liability company (the "Company").

## RECITAL

Pursuant to that certain Membership Interest and Note Purchase Agreement of even date herewith by and among Dari Concepts, LLC, the Assignor, the Assignee, EF Global Corporation, TieTek Global LLC, TTG Real Estate LLC, TTG Operating LLC, and LT Resources, Inc., the Assignor has agreed to transfer that certain Promissory Note issued by the Company to Assignor as set forth on Exhibit A attached hereto  (the "Angela Note") to the Assignee, and the Assignee has agreed to accept the Angela Note from the Assignor.

## AGREEMENT

IN CONSIDERATION of the recital set forth hereinabove, the mutual promises and covenants hereinafter contained, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged hereby, the parties to this Assignment, intending legally to be bound, hereby agree as follows:

1.      The Assignor hereby assigns, transfers, conveys and sets over unto the Assignee all of the Assignor's right, title and interest in and to the Angela Note;

2.      The Assignee hereby accepts the assignment of the Angela Note from the Assignor and assumes all of Assignor's right, title and interest in and to the Angela Note;

3.      The Company hereby agrees to and approves of such assignment from Assignor to Assignee.

*[The remainder of this page is intentionally left blank.]*

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement effective as of the day and year first above written.

ASSIGNOR:

_____

Angela Kilic-Cave

ASSIGNEE:

EFG TIETEK, LLC

By:_____
    Name: D. Elroy Fimrite
    Title: President

COMPANY

TIETEK GLOBAL LLC

By:_____
    Name: Linda Thomas
    Title: President

4886-1042-3339.v2

**EXHIBIT A**

<u>ANGELA NOTE</u>

(See attached)

**Exhibit 6.2(e)**
Deed of Trust
(See attached)

4866-4144-9259.v4

PREPARED BY AND WHEN
RECORDED RETURN TO:

Pillsbury Winthrop Shaw Pittman LLP
909 Fannin Street, Suite 2000
Houston, TX 77010
Attention: Adam J. Weaver, Esq.

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

_____

**TTG REAL ESTATE LLC**,
a Texas limited liability company, as grantor
(Grantor)

to

**MARNI ZARIN**, as trustee
(Trustee)

for the benefit of

**DARI CONCEPTS, LLC**,
a Delaware limited liability company, as beneficiary
(Beneficiary)

_____

**DEED OF TRUST**

_____

Dated:      As of August ___, 2022
Location:   429 Memory Lane, Marshall, Texas
County:    Harrison

---

## DEED OF TRUST

     **THIS DEED OF TRUST,** (as it may be from time to time amended, modified, extended, substituted, and/or supplemented, referred to as the "Deed of Trust") is made this ___ day of August, 2022, by **TTG REAL ESTATE LLC**, a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas, having an office at

15814 Champion Forest Drive, Suite 302, Spring, Texas 77379, ("Grantor"), to MARNI ZARIN, having an address of c/o First American Title Company, 601 Travis, Suite 1875, Houston, Texas 77002 ("Trustee") as Trustee for the benefit of **DARI CONCEPTS, LLC,** a Delaware limited liability company, having an office at 200 Continental Drive, Suite 401, Newark, Delaware 19713, its successors and assigns ("Beneficiary").

# W I T N E S S E T H:

WHEREAS, Beneficiary, has agreed to make available to Grantor a commercial deed of trust loan in a maximum principal amount of $5,000,000.00 (hereinafter, as it may be from time to time amended, modified, extended, substituted, and/or supplemented, referred to as the "Loan"); and

WHEREAS, the Loan is evidenced by that certain (i) Secured Promissory Note dated the date hereof, executed by Grantor, EFG TieTek, LLC, a Delaware limited liability company ("EFG"), EF Global Corporation, a Delaware corporation ("EF Global"), TieTek Global LLC, a Texas limited liability company (the "Company"), TTG Operating LLC, a Texas limited liability company ("TTG Op"), and LT Resources, Inc., a Texas corporation ("LT" and together with EFG, EF Global, the Company, Grantor, and TTG Op, the "Borrowers"), as borrower, in favor of Beneficiary, as lender, in the principal amount of $5,000,000.00 (hereinafter, as it may be from time to time amended, modified, extended, renewed, substituted, and/or supplemented, referred to as the "Note"), and (ii) Security Agreement dated the date hereof, executed by Grantor, the Company, TTG Op, LT, EFG, EF Global, and Angela Kilic-Cave (hereinafter, as it may be from time to time amended, modified, extended, renewed, substituted, and/or supplemented, referred to as the "Security Agreement"); and

WHEREAS, capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Note; and

WHEREAS, this Deed of Trust is given and made by Grantor to Beneficiary, as security for (i) the repayment of the indebtedness of the Borrowers evidenced by the Note, and (ii) the performance of the terms, conditions, and covenants of the Borrowers set forth in the Security Agreement, this Deed of Trust, and all of the other documents related to the Loan (the "Loan Documents").

NOW, THEREFORE, in order to induce the Beneficiary to make the Loan available to the Borrowers and to secure the payment of the indebtedness of the Borrowers owed to the Beneficiary, evidenced by the Note, and to secure the performance by Grantor of all of its other obligations and covenants pursuant to the terms, conditions, and provisions of the Security Agreement, this Deed of Trust, and all of the other Loan Documents, and to assure the payment of all other indebtedness, monetary obligations, liabilities, and duties of any kind of the Borrowers, direct or indirect, absolute or contingent, joint or several, due or not due, liquidated or not liquidated, arising under the Note, this Deed of Trust or any of the other Loan Documents, Grantor has hereby mortgaged, given, granted, released, assigned, transferred, bargained, sold, conveyed and set over unto Trustee, in trust for the benefit of Beneficiary, and by these presents does hereby mortgage, give, grant, release, assign, transfer, bargain, sell convey and set over unto Trustee, in trust for the benefit of Beneficiary, its successors and assigns forever, WITH

2

THE POWER OF SALE, the following described property and rights (collectively, the "Trust Premises" or "Trust Property"):

ALL that certain lot, tract or parcel of land situated in Harrison County, Texas, about 7 miles North of the Courthouse in the City of Marshall, being 38.144 acres of land, a part of the LEWIS WATKINS SURVEY, A-750, being the residue of that certain called 39.993 acre tract of land described in deed from TieTek LLC to American TieTek, LLC, dated September 5, 2010, and recorded in Clerk's File No. 2010-000011978, Official Public Records, Harrison County, Texas, said 38.144, as more particularly described on Schedule "A" attached hereto and made a part hereof (the "Premises");

**TOGETHER** with all and singular tenements, hereditaments, buildings, improvements, rights-of-way, privileges, liberties, air rights, easements, Grantor's rights as declarant under any restrictive covenants, riparian rights, waters, watercourses, mineral, oil and gas rights and appurtenances thereunto belonging, or in any wise appertaining and the reversion and remainder and remainders, rents, income, issues, and profits thereof; and

**TOGETHER** with all rights, title, and interests of Grantor, now owned or hereafter acquired, in and to any streets, the land lying in the bed of any streets, roads or avenues, opened or proposed, in front of, adjoining or abutting the Premises to the center line thereof, and all strips and gores within or adjoining the Premises, easements and rights-of-way, public or private, all sidewalks and alleys, now or hereafter used in connection with the Premises or abutting the Premises; and

**TOGETHER** with any and all of Grantor's right, title and interest in any and all agreements, now or hereafter in existence providing for or relating to the construction, alteration, maintenance, repair, operation, franchising, or management of the Premises or any part thereof, as well as the plans and specifications therefor, and all copies thereof (together with the right to amend or terminate the same or waive the provisions of the foregoing) and any amendments, renewals and replacements thereof; to the extent permitted by the relevant authorities, all of Grantor's right, title and interest in any and all licenses, permits, approvals and other entitlements for the ownership, construction, maintenance, operation, use and occupancy of the Premises or any part thereof and any amendments, renewals and replacements thereof; all of Grantor's rights, title, and interests in and to all warranties and guaranties from contractors, subcontractors, suppliers and manufacturers to the maximum extent permissible relating to the Premises or any part thereof; and all of Grantor's right, title and interest in any and all bonds and insurance policies covering or affecting the Premises or any part thereof; and

**TOGETHER** with any and all personal property of Grantor, including the following, all whether now owned or hereafter acquired or arising and wherever located: (i) accounts; (ii) securities entitlements, securities accounts, commodity accounts, commodity contracts and investment property; (iii) deposit accounts; (iv) instruments (including promissory notes); (v) documents (including warehouse receipts); (vi) chattel paper (including electronic chattel paper and tangible chattel paper); (vii) inventory, including raw materials, work in process, or materials used or consumed in Grantor's business, items held for sale or lease or furnished or to be furnished under contracts of service, sale or lease, goods that are returned, reclaimed or repossessed; (viii) goods of every nature, including stock-in-trade, goods on consignment,

3

manufactured homes, computer programs embedded in such goods and farm products; (ix) equipment, including machinery, vehicles and furniture; (x) fixtures; (xi) as-extracted collateral; (xii) letter of credit rights; (xiii) general intangibles, of every kind and description, including payment intangibles, software, computer information, source codes, object codes, records and data, choses in action, claims (including claims for indemnification or breach of warranty), books, records, building names and trademarks or tradenames pertaining to the Premises, blueprints, drawings, designs and plans, contracts, licenses, license agreements, formulae, tax and any other types of refunds, returned and unearned insurance premiums allocable to the Premises, rights and claims under insurance policies; (xiv) all property of Grantor now or hereafter in Beneficiary's possession or in transit to or from, or under the custody or control of, Beneficiary; (xv) all cash and cash equivalents thereof; and (xvi) all cash and noncash proceeds (including insurance proceeds) of all of the foregoing property, all products thereof and all additions and accessions thereto, substitutions therefor and replacements thereof; and

**TOGETHER** with any and all awards, damages, payments and other compensation, and any and all claims therefor and rights thereto, with respect to the Premises which result or may result from any injury to or decrease in value of the Premises, whether by virtue of the exercise of the power of eminent domain or otherwise, or any damage, injury or destruction in any manner caused to the improvements thereon, or any part thereof; and

**TOGETHER** with all the estate, right, title, interest, property, possession, claim, and demand whatsoever of Grantor, as well in law as in equity, of, in and to the same and every part and parcel thereof with the appurtenances.

**TO HAVE AND TO HOLD** the above granted Trust Premises unto and to the use and benefit of Beneficiary, its successors and assigns, to its and their proper use, benefit and behalf forever.

**PROVIDED THAT** if Grantor shall well and truly pay, or there shall otherwise be paid to Beneficiary, the indebtedness evidenced by the Note and all other Obligations payable under the other Loan Documents, and Grantor shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in all of the other Loan Documents, then these presents and the lien and interest hereby transferred and assigned shall cease, terminate and be void and Beneficiary release the Trust Premises and renounce any other rights granted to it herein and shall execute, or cause the Trustee to execute, at the request of Grantor, a release of this Deed of Trust and any other instrument to that effect deemed necessary or desirable.

# ARTICLE I
## GRANTOR REPRESENTS, WARRANTS, COVENANTS, AND AGREES WITH BENEFICIARY AS FOLLOWS:

**1.1 Definitions**. In this Deed of Trust, all words and terms not expressly defined herein shall have the respective meanings and be construed herein as provided for or defined in the Note. Any reference to a provision of the Note or the Security Agreement shall be deemed to incorporate that provision as a part hereof in the same manner and with the same effect as if the same were fully set forth herein.

4886-7188-8939.v2

**1.2    Interpretation and Construction**. All words, terms and provisions of the Note and the Security Agreement shall be applied to this Deed of Trust in the same manner as applied therein to the applicable document.

**1.3    Beneficiaries**. Nothing herein expressed or implied is intended or shall be construed to confer upon, or to give to, any person other than Grantor and Beneficiary any right, remedy or claim under or by reason hereof. All covenants, stipulations and agreements herein contained by and on behalf of Grantor shall be for the sole and exclusive benefit of Beneficiary, their successors and/or assigns.

**1.4    Indebtedness**. Grantor shall pay the indebtedness evidenced by the Note and secured by this Deed of Trust and the other Loan Documents at the time and in the manner provided for the payment of the same in the Note.

**1.5    No Credit for Taxes Paid**. Grantor shall not be entitled to any credit against payments due hereunder (except payments due under Section 1.17) by reason of the payment of any taxes, assessments, water or sewer rent, or other governmental charges levied against the Trust Premises.

**1.6    Representations and Warranty**. Grantor is seized of an indefeasible estate in fee simple in and to the Trust Premises and hereby warrants to Beneficiary the title to the Trust Premises. Grantor hereby covenants that Grantor (i) shall preserve such title and the validity and priority of the lien of this Deed of Trust and shall forever warrant and defend the same to Beneficiary against all lawful claims whatsoever and the claims of all Persons whomsoever claiming or threatening to claim the same or any part thereof and (ii) shall make, execute, acknowledge and deliver all such further or other deeds, documents, instruments, or assurances, and cause to be done all such further acts as may at any time hereafter be reasonably required by Beneficiary to protect fully the lien of this Deed of Trust.

**1.7    Insurance**. Grantor shall obtain, or cause to be obtained, and shall maintain or cause to be maintained, at all times throughout the term of this Deed of Trust, insurance on the Trust Premises in such amounts and in such manner and against such loss, damage and liability, including liability to third parties, as is required pursuant to Section 7 of the Security Agreement. After an Event of Default, Beneficiary shall have the absolute right to force place any or all of such insurance. The cost of such force placed insurance shall be paid immediately by Grantor, shall be secured by this Deed of Trust and the other Loan Documents, and, if not paid immediately by Grantor, shall bear interest at the Default Rate as set in Section 11 of the Note.

**1.8    Declaration of No Offset**. Grantor hereby represents to Beneficiary that, as of the date hereof, Grantor has no knowledge of any offsets, counterclaims, or defenses to the principal indebtedness secured hereby, or to any part thereof, or the interest thereon, either at law or in equity. Grantor shall, within a reasonable period of time after request, furnish a duly acknowledged written statement in form reasonably satisfactory to Beneficiary stating either that Grantor knows of no such offsets or defenses or if such offsets or defenses are alleged to exist, the nature and extent thereof and, in either case, such statements shall set forth the amount due hereunder.

4886-7188-8939.v2

**1.9 No Additional Liens on Fixtures**. Grantor shall not remove or suffer to be removed from the Trust Premises any fixtures owned by Grantor (as the term "fixtures" is defined by the Uniform Commercial Code in the State of Texas, as amended and/or modified from time to time) presently or in the future to be incorporated into, installed in, annexed, or affixed to the Trust Premises (unless such fixtures have been replaced with similar fixtures of equal or greater utility or value); nor shall Grantor execute or cause to be executed any security interest upon any such fixtures, additions to, substitutions, or replacements thereof, or upon any fixtures in the future to be installed in, annexed or affixed to the Trust Premises, without the prior express written consent of Beneficiary.

**1.10 Performances**. Grantor shall perform and abide by the terms and covenants contained herein and the terms and covenants contained in the Note, the Security Agreement, and the other Loan Documents, all of which are made a part hereof as though set forth herein at length.

**1.11 Waiver**. The acceptance by Beneficiary of any payments hereunder, upon the occurrence and during the continuance of an Event of Default, or the failure of Beneficiary in any one or more instances to insist upon strict performance by Grantor of any terms and covenants of this Deed of Trust or to exercise any option or election herein conferred, shall not be deemed to be a waiver or relinquishment for the future of any such terms, covenants, elections, or options.

**1.12 Law Governing; Consent to Jurisdiction. WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND PROCEDURES RELATING TO THE ENFORCEMENT OF THIS DEED OF TRUST, THIS DEED OF TRUST SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PREMISES IS LOCATED (WITHOUT REGARD TO CONFLICT OF LAW PROVISIONS THEREOF THAT WOULD APPLY THE LAWS OF ANOTHER JURISDICTION), IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF TEXAS (WITHOUT REGARD TO CONFLICT OF LAW PROVISIONS THEREOF THAT WOULD APPLY THE LAWS OF ANOTHER JURISDICTION) SHALL GOVERN ALL MATTERS RELATING TO THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. ALL PROVISIONS OF THE NOTE AND THE SECURITY AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS.**

**ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST GRANTOR OR BENEFICIARY ARISING OUT OF OR RELATING TO THIS DEED OF TRUST MAY, AT BENEFICIARY'S OPTION, BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE STATE OF TEXAS, AND GRANTOR AND BENEFICIARY (BY ITS ACCEPTANCE HEREOF) HEREBY WAIVE ANY OBJECTIONS WHICH THEY MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GRANTOR**

**AND BENEFICIARY (BY ITS ACCEPTANCE HEREOF) HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.**

**1.13    Modifications in Writing**. The terms of this Deed of Trust may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

**1.14    Furniture, Fixtures and Equipment**. This Deed of Trust constitutes a security agreement under the Texas Uniform Commercial Code, as amended and/or modified from time to time, and Grantor hereby grants to Beneficiary a security interest in all furniture, fixtures, and equipment and all other machinery, appliances, furnishings, tools and building materials and other personal property of Grantor now owned or hereafter acquired by Grantor, and installed or to be installed in or on the Trust Premises and used or to be used in the management or operation of the Trust Premises including, without limitation, any and all substitutions, replacements, additions, and accessions thereto, together with any and all cash and non-cash proceeds thereof. Grantor hereby authorizes Beneficiary to file and refile any financing statements, continuation statements, or other security agreements that Beneficiary may require from time to time to confirm the lien of this Deed of Trust with respect to such property. Without limiting the foregoing, Grantor hereby irrevocably constitutes and appoints Beneficiary with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority (coupled with interest) in the place and stead of Grantor and in the name of Grantor or in Beneficiary's own name, for Beneficiary to execute, deliver, and file such instruments for and on behalf of Grantor. Notwithstanding any release of any or all of that property included in the Deed of Trust Premises which is deemed to be "real property", and proceedings to foreclose this Trust or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interest created hereby and referred to above until the repayment or satisfaction in full of the obligations of Grantor as are now or hereafter secured hereby.

**1.15    No Assignment**. This Deed of Trust shall not be assigned by Grantor without the prior express written consent of Beneficiary.

**1.16    Date of Deed of Trust**. The date of this Deed of Trust shall be for identification purposes only and shall not be construed to imply that this Deed of Trust was executed on any date other than the date of the acknowledgments of the parties hereto. This Deed of Trust shall become effective upon its delivery.

**1.17    Taxes**. Grantor shall prepare and timely file all Federal, state and local tax returns required to be filed by Grantor and promptly pay and discharge all taxes, assessments, municipal or governmental rates, charges, impositions, liens and water and sewer rents or any part thereof, heretofore or hereafter imposed upon Grantor or in respect of the Trust Premises before the same shall become in default, as well as all lawful claims which if unpaid might become a lien or charge upon Grantor, the Trust Premises, or any part thereof and any and all insurance premiums, costs, and other expenses with respect to the types and amounts of insurance required to be maintained by Grantor pursuant to the Security Agreement ("Property Taxes and Charges"), except for those Property Taxes and Charges then being diligently contested in good faith by Grantor in accordance with the terms of Section 8 of the Security Agreement.

4886-7188-8939.v2

**1.18    Compliance with Laws**. Grantor hereby agrees to comply with all Laws which are now or may hereafter be applicable to the Trust Premises within such time as may be required by Law. As of the date hereof, Grantor has not received any written notice from any Governmental Authority that the Trust Premises is in violation of any such Law. Grantor hereby covenants and agrees that, if such a written notice is received by Grantor, whether directly or from any tenant in the Trust Premises, at any time during the existence of this Deed of Trust, Grantor shall promptly notify Beneficiary in writing as to the nature and the extent of such claimed violation and shall further provide Beneficiary a copy of such notice.

**1.19    Indemnification**. Grantor hereby agrees to and does hereby indemnify, protect, defend and save harmless Beneficiary, and their directors, officers, employees, and agents (collectively, the "Indemnified Parties" and individually, an "Indemnified Party") from and against any and all losses, liabilities, damages, liens, expenses, charges, costs, penalties, fines, injunctions, suits, claims, judgments or demands, of any kind or nature (including (i) fees and expenses of outside counsel and (ii) a reasonable estimate of the allocated cost of in-house counsel incurred in investigating or defending such claim during any such time that an Event of Default has occurred and is continuing) (collectively, "Losses", and individually a "Loss"), suffered by any Indemnified Party and caused by, relating to, arising out of, resulting from, or in any way connected with this Deed of Trust and the transactions contemplated herein, including, without limitation, disputes between any architect, general contractor, subcontractor, materialman or supplier, or on account of any act or omission to act by Beneficiary in connection with this Deed of Trust; provided, however, that in no event shall Grantor be obligated to indemnify any Indemnified Party for any Losses to the extent caused by the gross negligence or willful misconduct of an Indemnified Party. In case any action shall be brought against the Indemnified Parties, Grantor shall (upon being notified by Beneficiary in writing) assume the defense thereof including, without limitation, (1) the employment of counsel selected by Grantor and reasonably satisfactory to Beneficiary, (2) the payment of all costs and expenses related thereto, and (3) the right to negotiate and consent to settlement. The Indemnified Parties shall have the right to also employ separate counsel in any such action (at their own expense) and to participate in the defense thereof. Grantor shall not settle any such action Beneficiary's consent (which shall not be unreasonably withheld) and Beneficiary shall not be liable for any settlement of any such action effected without Grantor's consent, but if settled with Grantor's consent, or if there be a final judgment rendered for the claimant in any such action, Grantor hereby agrees to indemnify and save harmless the applicable Indemnified Party from and against any loss or liability by reason of such settlement or judgment, except as otherwise expressly provided above in this Section 1.19. The provisions of this Section 1.19 shall survive the repayment of the Loan and the termination of the Loan Documents including, without limitation, the termination or release of this Deed of Trust, and shall be indefinite.

**1.20    [Intentionally Omitted.] Advances**. Upon the occurrence and during the continuance of an Event of Default, Beneficiary may, at its sole option, remedy such Event of Default, and all payments made by Beneficiary to remedy any such Event of Default by Grantor (including, without limitation, reasonable outside attorneys' fees) and the total of any payment or payments due from Grantor to the Beneficiary which are in default, together with interest thereon at the Default Rate (such interest to be calculated from the date of such advance to the date of payment thereof by Grantor), shall be added to the indebtedness secured by this Deed of Trust until paid, and Grantor hereby covenants to repay the same to Beneficiary on the next interest

8

payment date under the Note following demand by Beneficiary. Any such sums and the interest thereon shall be a Lien on the Trust Premises prior to any other Lien attaching to or accruing subsequent to the Lien of this Deed of Trust.

**1.22    Permitted Encumbrances**. At no time throughout the term of this Deed of Trust shall Grantor create, incur, assume, or suffer to exist any Deed of Trust, deed of trust, pledge, lien, security interest, encumbrance, attachment, levy, distraint, or other judicial process and burdens of any kind or nature on or with respect to any of the Beneficiary Premises without the prior express written consent of Beneficiary, except for Permitted Encumbrances.

**1.23    Utilities**. Grantor hereby represents and warrants that (i) Trust Premises is served by all required public and/or private utilities, including, without limitation, gas, electric, water, sewer, and telephone or (ii) all required utilities, including, without limitation, gas, electric, water, sewer, and telephone, are available to the Trust Premises.

**1.24    [Intentionally                                                         omitted.]**
**INTENTIONALLY OMITTED**

**2.1    [Intentionally                                                         omitted.]**
**IF ANY EVENT OF DEFAULT SHALL HAVE OCCURRED AND IS CONTINUING ON THE PART OF GRANTOR, BENEFICIARY MAY TAKE ANY OR ALL OF THE FOLLOWING ACTIONS, AT THE SAME OR AT DIFFERENT TIMES:**

**3.1    Acceleration**. Beneficiary may declare the entire amount of the principal, together with accrued and unpaid interest and other moneys due under this Deed of Trust and/or the Note, immediately due and payable, and accordingly accelerate payment thereof notwithstanding contrary terms of payment stated therein, without presentment, demand or notice of any kind, all of which are expressly waived, notwithstanding anything to the contrary contained in this Deed of Trust and/or the Note.

**3.2    Possession**. Beneficiary may (i) enter upon and take possession of Trust Premises, (ii) lease and let the Trust Premises, (iii) receive all the rents thereof which are overdue, due or to become due, and apply the same, after payment of all necessary charges and expenses, on account of the indebtedness secured by this Deed of Trust. Beneficiary is given and granted full power and authority to do any act or thing which Grantor or successors or assigns of Grantor who may then own the Trust Premises might or could do in connection with the management and operation of the Trust Premises. This covenant becomes effective either with or without any action brought to foreclose this Deed of Trust and without applying for the appointment of a receiver of such Rents, if any.

**3.3    Foreclosure**. Beneficiary may institute an action of foreclosure, or take other action as the law may allow, at law or in equity, for the enforcement of this Deed of Trust and proceed thereon to final judgment and execution of the entire unpaid principal balance of the Loan including costs of suit, interest and reasonable attorney's fees. In case of any sale of the Trust Premises by judicial proceedings, the Trust Premises may be sold in one parcel or in such parcels, manner or order as Beneficiary in its sole and absolute discretion may elect. Beneficiary shall not be required to marshall any portion of the Trust Premises. The failure to make any

4886-7188-8939.v2

tenants parties defendant to a foreclosure proceeding shall not be asserted by Grantor as a defense in any proceeding instituted by Beneficiary to collect the obligations secured hereby or any deficiency remaining unpaid after the foreclosure sale of the Trust Premises.

**3.4** **Appointment of Receiver**. Beneficiary may have a receiver of the rents, income, issues and profits of the Trust Premises appointed without the necessity of proving either the depreciation or the inadequacy of the value of the security or the insolvency of Grantor or any Person who may be legally or equitably liable to pay moneys secured hereby, and Grantor and each such Person waive such proof and consent to the appointment of a receiver.

**3.5** **Fair Rental Payments**. If Grantor or any subsequent owner is occupying the Trust Premises or any part thereof, it is hereby agreed that said occupants shall pay such reasonable rental monthly in advance as Beneficiary shall demand for the Trust Premises or the part so occupied, and for the use of personal property covered by this Deed of Trust or any chattel Deed of Trust.

**3.6** **Excess Monies**. Beneficiary may apply on account of the unpaid indebtedness evidenced by the Note (including any unpaid accrued interest) owed to Beneficiary after a foreclosure sale of the Trust Premises, whether or not a deficiency action shall have been instituted, any unexpended monies still retained by Beneficiary that were paid by Grantor to Beneficiary (i) for the payment of, or as security for the payment of Property Taxes and Charges, if any, or (ii) in order to secure the performance of some act by Grantor.

**3.7** **Remedies at Law or Equity**. Beneficiary may take any of the remedies otherwise available to it as a matter of law or equity.

## ARTICLE IV
## MISCELLANEOUS:

**4.1** **Cumulative Rights**. The rights and remedies herein expressed to be vested in or conferred upon Beneficiary shall be cumulative and shall be in addition to, and not in substitution for or derogation of the rights and remedies conferred by any applicable law. The failure, at any one or more times, of Beneficiary to assert the right to declare the principal indebtedness due or the granting of any extension or extensions of time of payment of the Loan either to the maker or to any other Person, the taking of other or additional security for the payment thereof, or releasing of any security, or changing any of the terms of this Deed of Trust, the Note, or any other obligation secured by or arising under this Deed of Trust, or the waiver of or failure to exercise any right under any covenant or stipulation herein contained shall not in any way affect this Deed of Trust nor the rights of Beneficiary hereunder nor operate as a release from any personal liability upon the Note or other obligation secured by or arising under this Deed of Trust, nor under any covenant or stipulation therein contained, nor under any agreement assuming the payment of said Note or obligations.

**4.2** **Application of Proceeds**. All payments and proceeds received under Article III of this Deed of Trust after the occurrence of an Event of Default shall be applied in accordance with the terms of the Note. If the amount of the proceeds received from the sale or other

4886-7188-8939.v2

disposition of the Trust Premises shall be insufficient to satisfy in full the Obligations, then the Borrowers, shall remain and be liable for any such deficiency.

**4.3     Waiver of Defaults**. Beneficiary may, subject to the terms of the Loan Documents, by express written notice to Grantor, waive any Event of Default hereunder and its consequences and rescind any acceleration or maturity of principal. In every case of any such waiver or rescission, in accordance with the preceding sentence, Beneficiary shall be bound thereby.

**4.4     Payment of Attorneys' Fees and Expenses**. Upon the occurrence of an Event of Default, as a result of which Beneficiary shall employ attorneys or incur other expenses for the collection of the payments due or to become due or the enforcement or performance or observance of any obligation or agreement on the part of Grantor contained herein, Grantor shall, on demand, pay to Beneficiary, the reasonable fees of such outside attorneys and such other reasonable expenses so incurred by Beneficiary (expressly including any and all post-judgment collection costs and expenses).

**4.5     No Additional Waiver Implied by One Waiver**. In the event any agreement contained in this Deed of Trust should be breached by Grantor and thereafter waived by Beneficiary, such waiver shall be limited to the actual breach so waived and shall not be deemed to waive any other breach hereunder.

**4.6     WAIVER OF JURY TRIAL. GRANTOR AND BENEFICIARY HEREBY WAIVE ANY AND ALL RIGHTS THAT THEY MAY NOW OR HEREAFTER HAVE, POSSESS AND ENJOY UNDER THE LAWS OF THE UNITED STATES OF AMERICA OR ANY STATE, TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING EITHER DIRECTLY OR INDIRECTLY IN ANY ACTION OR PROCEEDING BETWEEN GRANTOR AND BENEFICIARY OR THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, OUT OF OR IN ANY WAY CONNECTED WITH THIS DEED OF TRUST. IT IS INTENDED THAT SAID WAIVER OF JURY TRIAL SHALL APPLY TO ANY AND ALL DEFENSES, RIGHTS, AND/OR COUNTERCLAIMS IN ANY ACTION OR PROCEEDING. GRANTOR AND BENEFICIARY HEREBY RECOGNIZE THAT ANY DISPUTE ARISING IN CONNECTION WITH THE LOAN, IS LIKELY TO BE COMPLEX AND CONSEQUENTLY THEY WISH TO STREAMLINE AND MINIMIZE THE COST OF THE DISPUTE RESOLUTION PROCESS BY AGREEING TO WAIVE THEIR RIGHTS TO A JURY TRIAL.**

**4.7     Notices**. All notices, payments, requests, reports, information or demands which any party hereto may desire or may be required to give to any other party hereunder, shall be delivered in accordance with the terms of the Note.

**4.8     Successors and Assigns**. All of the terms, covenants, provisions, and conditions herein contained shall be for the benefit of, apply to, and bind the successors and assigns of Grantor and Beneficiary, and are intended and shall be held to be real covenants running with the land, and the term "Grantor" shall also include any and all subsequent owners and successors in title to the Deed of Trust Premises, and the term "Beneficiary" shall include all of Beneficiary's successors and assigns.

4886-7188-8939.v2

**4.9    Gender**. When such interpretation is appropriate, any word denoting gender used herein shall include all persons, natural or artificial, and words used in the singular shall include the plural.

**4.10    [Intentionally omitted.] Changes in the Deed of Trust**. Grantor and Beneficiary may agree to change the interest rates and/or the Maturity Dates of the Note or other term or terms of this Deed of Trust or of the obligations secured by this Deed of Trust, and no such changes shall affect the validity or priority of this Deed of Trust.

**4.12    [Intentionally omitted.]**.

**4.13.**    In the event of any conflict between the provisions of this <u>Section 4.13</u> and any other provision herein, then the provisions of this <u>Section 4.13</u> shall control.

(a)    <u>Secured Obligations</u>. For the avoidance of doubt, (a) any attorney's fees required to be paid by any party to the Loan Documents in accordance with the Note, the Security Agreement or any other Loan Document are secured by this Deed of Trust, and (b) the indebtedness evidenced by the Note of even date herewith, incorporated herein by reference, executed by Grantor in the principal amount of $5,000,000.00, bearing interest as therein specified, and finally maturing on the Maturity Date, and secured by this Deed of Trust includes any indebtedness evidenced by any amendment, restatement, supplement or modification of or to the Note.

(b)    <u>Foreclosure, Sale and Other Matters</u>.

(i)    Upon the occurrence and during the continuation of any Event of Default, Beneficiary may, by and through the Trustee, or successor trustee, and upon receipt of instructions from Beneficiary to Trustee, or any successor trustee, Trustee or any such successor trustee shall, sell or offer for sale the Trust Property in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash at public auction in accordance with the requirements of Section 51.002 of the Texas Property Code (as said section now exists or may be hereinafter amended or succeeded). Such sale shall be made at the courthouse of the county in which the Trust Property (or any of that portion thereof to be sold) is located (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any personalty present at such sale) in the area designated by the county commissioners for foreclosure sales (or, if no area has been designated, at the location at the courthouse designated by Beneficiary by or through Trustee in the written notice hereinafter described) on the first Tuesday of a month between the hours of 10:00 a.m. and 4:00 p.m. after advertising the time, place and terms of sale and that portion of the Trust Property to be sold by posting or causing to be posted written or printed notice thereof at least twenty-one (21) days before the date of the sale both at the courthouse door of each county in which the Trust Property is located and with the county clerk of each county in which the Trust Property is located, which notice shall be posted at the courthouse door and filed with the county clerk by the Trustee, or by any person acting for him. The written notice shall include the earliest time at which the sale will be held. To the extent required by applicable law, such sale must begin at the time stated in the notice of sale or not later than three (3) hours after that time. Beneficiary shall serve, or shall cause to be served at least twenty-one (21) days before the date of sale, written or printed notice of the proposed sale by certified mail

12

on each debtor obligated to pay the indebtedness constituting Obligations according to the records of Beneficiary by the deposit of such notice in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of Beneficiary. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

(ii)      To the extent permitted by applicable law, any sale made by Trustee hereunder may, in lieu of cash, be upon such other terms and conditions as Beneficiary may from time to time hereafter elect. The sale by Trustee of less than the whole of the Trust Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sale(s) under such power until the whole of the Trust Property shall be sold and, if the proceeds of such sale of less than the whole of the Trust Property shall be less than the aggregate of the indebtedness secured hereby and the expense of executing this trust as provided herein, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Trust Property just as though no sale had been made; provided, however, that Grantor shall never have any right to require the sale of less than the whole of the Trust Property but Beneficiary shall have the right, at its sole election, to request Trustee to sell less than the whole of the Trust Property. The power of sale granted herein shall not be exhausted by any sale held hereunder by Trustee or his substitute or successor, and such power of sale may be exercised from time to time and as many times as Beneficiary may deem necessary until all of the Trust Property has been sold and all secured indebtedness has been fully paid. In the event any sale hereunder is not completed or is defective in the opinion of Beneficiary, such sale shall not exhaust the power of sale hereunder and Beneficiary shall have the right to cause a subsequent sale or sales to be made hereunder. Any and all statements of fact or other recitals made in any deed or deeds given by Trustee or any successor or substitute appointed hereunder as to nonpayment of the indebtedness secured hereby, or as to the occurrence of any Event of Default, or as to Beneficiary having declared all of such indebtedness to be due and payable, or as to the request to sell, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to the refusal, failure or inability to act of Trustee or any substitute or successor, or as to the appointment of any substitute or successor trustee, or as to any other act or thing having been duly done by Beneficiary or by such Trustee, substitute or successor, shall be taken as conclusive evidence of the truth of the facts so stated and recited. Trustee, his successor or substitute, may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices and the conduct of sale, but in the name and on behalf of Trustee, his successor or substitute.

(iii)      At any time during the bidding of any sale conducted by Trustee, Trustee may require a bidding party (i) to disclose its full name, state and city of residence, occupation, and specific business office location, and the name and address of the principal and the bidding party is representing (if applicable); and (ii) to demonstrate reasonable evidence of the bidding party's financial ability (or, if applicable, the financial ability of the principal of such bidding party), as a condition to the bidding party submitting bids at the foreclosure sale. If any such bidding party (the "Questioned Bidder") declines to comply with Trustee's requirement in this regard, or if such Questioned Bidder does respond but Trustee, in Trustee's sole and absolute discretion, deems the information or the evidence of the financial ability of the Questioned

4886-7188-8939.v2

Bidder (or, if applicable, the principal of such bidding party) to be inadequate, Trustee may continue the bidding with reservation; and in such event (y) Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (z) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to Trustee, all bids by the Questioned Bidder shall be null and void. Trustee may, in Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of Grantor and Beneficiary and elect to sell the Trust Property for credit or for a combination of cash and credit; provided, however, that Trustee shall have no obligation to accept any bid except an all cash bid. In the event Trustee requires a cash bid and cash is not delivered within a reasonable time after conclusion of the bidding process, as specified by Trustee (but in no event later than 3:45 p.m. local time on the date of sale), then said contingent sale shall be null and void, the bidding process may be recommenced, and any subsequent bids or sale shall be made as if no prior bids were made or accepted.

(iv)     This Deed of Trust shall be effective as a Deed of Trust as well as a mortgage and upon the occurrence of an Event of Default may be foreclosed as to any of the Trust Property in any manner permitted by the laws of the State of Texas or of any other state in which any part of the Trust Property is situated, and any foreclosure suit may be brought by Trustee or by Beneficiary. In the event a foreclosure hereunder shall be commenced by Trustee or his substitute or successor, Beneficiary may at any time before the sale of the Trust Property direct the said Trustee to abandon the sale, and may then institute suit for the collection of the Note and the other secured indebtedness, and for the foreclosure of this Deed of Trust. It is agreed that if Beneficiary should institute a suit for the collection of the Note or any other secured indebtedness and for the foreclosure of this Deed of Trust, Beneficiary may at any time before the entry of a final judgment in said suit dismiss the same, and require Trustee, his substitute or successor to sell the Trust Property in accordance with the provisions of this Deed of Trust.

(v)     Beneficiary may, at its option, accomplish all or any of the aforesaid in such manner as permitted or required by Section 51.002 of the Texas Property Code relating to the sale of real Trust Property after default by a debtor (as said section and chapter now exist or may be hereinafter amended or succeeded), or by any other present or subsequent articles or enactments relating to same. At such sale:

a.     whether made under the power herein contained, the aforesaid Section 51.002 of the Texas Property Code, the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Trust Property (Grantor shall deliver to Trustee any portion of the Trust Property not actually or constructively possessed by Trustee immediately upon demand by Trustee), and the title to and right of possession of any such Trust Property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale;

4886-7188-8939.v2

b.	each instrument of conveyance executed by Trustee shall contain a special warranty of title, made on behalf of Grantor;

c.	each and every recital contained in any instrument of conveyance made by Trustee shall be prima facie evidence of the truth and accuracy of the matters recited therein, including nonpayment of the indebtedness constituting Obligations, nonperformance of the Obligations, advertisement and conduct of such sale in the manner provided herein and otherwise by law and appointment of any successor Trustee hereunder;

d.	the receipt by Trustee or by such other party or officer making the sale of the full amount of the purchase money shall be sufficient to discharge the purchaser or purchasers from any further obligation for the payment thereof, and no such purchaser or purchasers, or his or their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication thereof;

e.	to the fullest extent permitted by law, Grantor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the Trust Property sold, and such sale shall be a perpetual bar, both at law and in equity, against Grantor and against all other persons claiming or to claim the Trust Property sold or to any part thereof by, through or under Grantor; and

f.	to the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale.

(vi)	In the event of a default in the payment of any part of the indebtedness constituting Obligations, Beneficiary shall have the right to proceed with foreclosure of the liens and security interests evidenced hereby without declaring the entire indebtedness due, and in such event any such foreclosure sale may be made subject to the unmatured part of the indebtedness; and any such sale shall not in any manner affect the unmatured part of the indebtedness, but as to such unmatured part, this Deed of Trust shall remain in full force and effect just as though no sale had been made. The proceeds of any such sale shall be applied as provided in Section 4.2.

(c)	Waiver of Marshalling, Homestead and Other Matters.  In addition to the provisions of Section 2 above, the following shall also apply:

(i)	To the full extent Grantor may do so, except as otherwise provided in the Loan Documents, Grantor, for Grantor and Grantor's successors and assigns, and for any and all persons ever claiming any interest in the Trust Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, presentment and demand of the whole of the secured indebtedness, notice of intention to mature or declare due the whole of the secured indebtedness, notice of intent to accelerate, notice of acceleration, and all rights to a marshalling of the assets of Grantor, including the Trust Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and security interests hereby created.

15

(ii)     To the extent that Grantor, any partner thereof or any other entity responsible for the payment of the indebtedness is now, or at any time or from time to time hereafter is, a partnership, Grantor and Beneficiary expressly acknowledge and agree that Beneficiary is not required to comply with Section 152.306(b) of the Texas Business Organizations Code, as same may be hereafter amended or modified, or any other or further laws, rules or regulations now or hereafter in effect which may limit the rights and remedies of a creditor to pursue partners of a partnership prior to the pursuit of such creditor's rights and remedies against such partnership. This waiver of Section 152.306(b) of the Texas Business Organizations Code is not intended to affect the limited liability of the limited partners of Grantor, any partner thereof or any other entity responsible for the payment of the indebtedness or any non-recourse provisions set forth in the Loan Documents.

(d)     Waiver of Notice. Grantor shall not be entitled to any notices of any nature whatsoever from Beneficiary except with respect to matters for which this Deed of Trust or other Loan Documents specifically and expressly provides for the giving of notice by Beneficiary to Grantor and except with respect to matters for which Beneficiary is required by applicable law to give notice, and, to the extent not prohibited by applicable law, Grantor hereby expressly waives the right to receive any notice from Beneficiary with respect to any matter for which this Deed of Trust or other Loan Document does not specifically and expressly provide for the giving of notice by Beneficiary to Grantor.

(e)     No Partnership. That notwithstanding anything to the contrary contained herein or otherwise (a) the relationship between Grantor and Beneficiary hereunder and otherwise shall be deemed, construed and treated by Grantor and Beneficiary for all purposes to be solely that of debtor/creditor; (b) the various consent, approval and other rights afforded to Beneficiary under this Deed of Trust have been granted and designed solely to protect the value of the Trust Property and to assure Grantor's payment of the indebtedness constituting Obligations and all of such rights are customarily granted lenders in a secured lending transactions; (c) Grantor and Beneficiary hereby expressly disclaim any sharing of liabilities, losses, costs or expenses with respect to the ownership or operation of all or any portion of the Trust Property, or otherwise; and (d) the terms contained herein are not intended by Grantor and Beneficiary and shall not for any purpose be deemed, construed or treated by Grantor and Beneficiary so as (i) to create a partnership or joint venture between Beneficiary and Grantor or between Beneficiary and any other party, or (ii) to cause Beneficiary to be or become liable in any way for the debts and obligations of Grantor (including any losses attributable to Grantor's operation of the Trust Property) or any other party.

(f)     Insurance. Notwithstanding any provision herein or in the Security Agreement or any other Loan Document to the contrary, pursuant to Section 549.054 of the Texas Insurance Code, Grantor shall not be required to furnish evidence of insurance more than fifteen (15) days prior to the termination date of an existing insurance policy, and pursuant to Section 549.052 of the Texas Insurance Code, Grantor shall not be required to obtain an insurance policy from or through a particular agent, insurer or other person or a particular type of class of agent, insurer or other person. Grantor shall, at Grantor's own expense, obtain and maintain and keep in full force and effect insurance upon and relating to the Trust Property.

16

TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE:

(i)    GRANTOR IS REQUIRED TO: (I) KEEP THE TRUST PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT BENEFICIARY SPECIFIES, (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS;

(ii)    GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND

(iii)    IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT GRANTOR'S EXPENSE.

(g)    **[Intentionally omitted.]**

(h)    Indemnity.

(i)    SUBJECT TO ANY PROVISIONS CONTAINED IN THE LOAN DOCUMENTS, IT IS THE EXPRESS INTENTION OF GRANTOR, AND GRANTOR HEREBY AGREES THAT, THE INDEMNITIES SET FORTH IN THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS WILL APPLY TO AND FULLY PROTECT EACH INDEMNIFIED PARTY EVEN THOUGH ANY CLAIMS, DEMANDS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS FEES) THEN THE SUBJECT OF INDEMNIFICATION MAY HAVE BEEN CAUSED BY, ARISE OUT OF, OR ARE OTHERWISE ATTRIBUTABLE TO, DIRECTLY OR INDIRECTLY, THE NEGLIGENCE IN WHOLE OR IN PART OF SUCH INDEMNIFIED PARTY AND/OR ANY OTHER PARTY; PROVIDED, HOWEVER, THAT GRANTOR SHALL NOT HAVE ANY OBLIGATION TO INDEMNIFY BENEFICIARY TO THE EXTENT THAT IT IS FINALLY JUDICIALLY DETERMINED THAT THE SUBJECT OF INDEMNIFICATION AROSE FROM THE GROSS NEGLIGENCE, ILLEGAL ACTS, FRAUD OR WILLFUL MISCONDUCT OF BENEFICIARY.

(ii)    GRANTOR HERBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN THIS SECTION 4) WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY GRANTOR OF BENEFICIARY FROM CLAIMS OR LOSSES ARISING AS A RESULT OF BENEFICIARY'S OWN NEGLIGENCE.

17

(i)     Incorporation by Reference.  The terms, covenants and provisions of the Note and the other Loan Documents have been incorporated into this Deed of Trust by this reference. All persons from time to time having an interest in all or any portion of the Trust Property are hereby placed on notice of all of the terms, covenants and provisions of the instruments incorporated herein and that copies of same may be obtained by those having an appropriate interest in the Trust Property or any portion thereof upon written request to the Beneficiary at the address set forth on the cover page of this Deed of Trust. Any such request shall include the name and address of the requesting party and also contain a brief explanation of the nature and reason for such request.

(j)     Jury Trial and DTPA Waiver.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, GRANTOR HEREBY ABSOLUTELY, IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY AND THE RIGHT TO CLAIM OR RECEIVE CONSEQUENTIAL OR PUNITIVE DAMAGES IN ANY LITIGATION, ACTION, CLAIM, SUIT OR PROCEEDING, AT LAW OR IN EQUITY, ARISING OUT OF, PERTAINING TO OR IN ANY WAY ASSOCIATED WITH THE INDEBTEDNESS, THE RELATIONSHIP OF THE PARTIES HERETO AS BENEFICIARY AND GRANTOR, THE NOTE, THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS, THE PREMISES OR THE ACTIONS OF GRANTOR AND/OR BENEFICIARY IN CONNECTION WITH ANY OF THE FOREGOING. FURTHER, GRANTOR REPRESENTS AND ACKNOWLEDGES THAT GRANTOR IS A "BUSINESS CONSUMER" FOR PURPOSES OF THE TEXAS DECEPTIVE TRADE PRACTICES    CONSUMER PROTECTION ACT, AS FROM TIME TO TIME AMENDED (THE "ACT"), THAT GRANTOR HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT ENABLE GRANTOR TO EVALUATE THE MERITS AND RISKS OF CREDIT TRANSACTIONS GENERALLY AND OF THE TRANSACTIONS CONTEMPLATED BY THE NOTE AND THE OTHER LOAN DOCUMENTS, THAT GRANTOR IS NOT IN A SIGNIFICANTLY DISPARATE BARGAINING POSITION WITH RESPECT TO BENEFICIARY AND SUCH TRANSACTIONS, THAT GRANTOR HAS BEEN REPRESENTED BY COUNSEL OF ITS SELECTION IN CONNECTION WITH THE NOTE AND SUCH TRANSACTIONS, AND THAT GRANTOR HEREBY WAIVES THE APPLICABILITY OF THE PROVISIONS OF THE ACT (OTHER THAN SECTION 17.555 THEREOF) WITH RESPECT TO THE NOTE AND SUCH TRANSACTIONS.

(k)     Section 26.02 Notice.  IN ACCORDANCE WITH SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, THIS DEED OF TRUST AND THE OTHER DOCUMENTS EVIDENCING, SECURING OR PERTAINING TO ALL OR ANY PORTION OF THE LOAN REPRESENT THE FINAL AGREEMENT BETWEEN GRANTOR AND BENEFICIARY AS TO THE SUBJECT MATTER THEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF SUCH PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN SUCH PARTIES.  THE PROVISIONS HEREOF AND THE OTHER LOAN DOCUMENTS MAY BE AMENDED OR WAIVED ONLY BY AN INSTRUMENT IN WRITING SIGNED BY GRANTOR AND BENEFICIARY.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

4886-7188-8939.v2

**IN WITNESS WHEREOF**, this Deed of Trust has been executed by Grantor as of the day and year first above written.

GRANTOR:

TTG REAL ESTATE LLC

By: TIETEK GLOBAL LLC, Manager


By: _____
Name: Linda Thomas
Title:  President


STATE OF_____
CITY/COUNTY OF_____


      The foregoing Deed of Trust was acknowledged before me in the jurisdiction aforesaid, this _____ day of _____, 20__, by _____ as _____ of _____, on behalf of such company.  Such person is personally known to me or produced a state issued driver's license as identification.

_____

      Notary Public
My commission expires: _____
Notary Registration No.:_____

[NOTARY SEAL]

<u>SCHEDULE "A"</u>


**ATTACHED TO AND MADE A PART OF THAT CERTAIN DEED OF TRUST AND SECURITY AGREEMENT BY TTG REAL ESTATE LLC, AS GRANTOR, IN FAVOR OF DARI CONCEPTS, LLC, AS BENEFICIARY,<br>
<u>DATED AUGUST ___, 2022</u>**


All that certain lot, tract or parcel of land situated in Harrison County, Texas, about 7 miles North of the Courthouse in the City of Marshall, being 38.144 acres of land, a part of the LEWIS WATKINS SURVEY, A-750, being the residue of that certain called 39.993 acre tract of land described in deed from TieTek LLC to American TieTek, LLC, dated September 5, 2010, and recorded in Clerk's File No. 2010-000011978, Official Public Records, Harrison County, Texas, said 38.144, acres being more particularly described as follows:

Beginning at a ½" iron rod found for the Southeast corner of said 39.993 acres, same being the Northeast corner of that certain called 10.000 acre tract described in deed to the Harrison County Archery Club and Range, LLC, recorded in Volume 4176, Page 257, of said Public Records, said rod also being in the West right of way (ROW) line of the T&P Railroad;

Thence North 80 deg.32'49" West, along the South line of said 39.993 acres and the North line of said called 10.00 acre tract, at 1239.62 feet pass a ½" iron rod found for reference on the East side of Memory Lane, County Road No. 4019, and continuing in all, 1274.69 feet, to a railroad spike set for the Southwest corner of said 39.993 acre tract, being in said road and being the Northwest corner of said called 10.000 acre tract, and also being on the Easterly line of that certain called 58.691 acre tract designated as "Tract Two" in deed to the Marshall Economic Development Corporation, recorded in Clerk's File No. 2011-000007436, of said Public Records;

Thence in a Northeasterly direction, generally along said Memory Lane, along the Western line of said 39.993 acre tract, and the Eastern line of said called 58.691 acre tract as follows:
   (1) North 26 deg.50'52" East, 132.00 feet to a railroad spike set,
   (2) North 38 deg.43'52" East, 400.00 feet to a railroad spike set,
   (3) North 33 deg.17'52" East, 400.00 feet to a railroad spike set,
   (4) North 34 deg.06'25" East, 1259.40 feet to a railroad spike found for corner at the Southerly corner of that certain called 1.832 acre tract described in deed to the Marshall Economic Development Corporation, recorded in Clerk's File No. 2013-000013530, of said Public Records;

Thence continuing in a Northeasterly direction along the Southeast line of said called 1.832 acre tract as follows:

(1) North 64 deg.03'30" East, 91.31 feet, to a ½" iron rod with surveyors cap stamped "MTX Surveying" set,

(2) Along a curve to the left, having a radius of 629.00 feet, an arc length of 222.40 feet, and a chord bearing and distance of North 53 deg.55'45" East, 221.24 feet, to a 1/2:" iron rod with surveyors cap stamped "MTX Surveying" set at the end of said curve, and,

(3) North 42 deg.50'53" East, 24.63 feet, to a ½" iron rod with surveyors cap stamped "MTX Surveying" set at an interior corner of said 1.832 acre tract;

Thence South 80 deg.29'32" East, along the Easterly South line of said 1.832 acre tract, 11.72 feet, to a ½" iron rod found for corner at the Southeast corner of said 1.832 acre tract and being on the East line of said 39.993 acre tract, and the West ROW line of said railroad;

Thence South 09 deg.30'31" West, along the East line of said 39.993 acre tract, and said West ROW line, 2216.53 feet, to the Place of Beginning and containing 38.144 acres of land, more or less.

**Exhibit 7.4**
The Special Obligations

(1). Commercial Guaranty by and between Angela Kilic-Cave and Guaranty Bank & Trust, N.A. relating to Loan No. 1290005997 for a Promissory Note in the principal amount of $177,928.

(2). Commercial Security Agreement relating to Loan No. 1290005997 by and between Angela Kilic-Cave and Linda Thomas and Guaranty Bank & Trust, N.A. for a Promissory Note in the principal amount of $177,928.

(3). Merchant Agreement by and between PIRS Capital, LLC, Linda Thomas, and Angela Kilic-Cave in the amount of $390,000.

(4). Security Agreement and Guaranty by and between PIRS Capital, LLC, Linda Thomas, and Angela Kilic-Cave relating to the Merchant Agreement the amount of $390,000.

(5). Receivables Purchase Agreement dated July 9, 2021, by and between Retail Capital LLC doing business as Credibly, Linda Thomas, Angela Kilic-Cave, TTG Operating LLC, LT Resources Inc., TTG Real Estate LLC, TTG Operating LLC, and Dari Concepts, LLC in the amount of $308,000.

(6). That certain lawsuit pending in the Supreme Court of New York, New York County, which is captioned *PIRS Capital LLC v. LT Resources, Inc. et al.* Index No. 657012/2022.

(7). That certain lawsuit pending in the Superior Court for the State of Arizona, Maricopa County, which is captioned *Retail Capital LLC v. TTG Operating LLC et al.*, Case No. CV2022-009759.

(8). Any and all obligations by Angela Kilic-Cave and/or Dari Concepts, LLC, a Delaware limited liability company, related to or arising from any guarantees or other contracts entered into in connection with TieTek Global LLC, a Texas limited liability company, TTG Real Estate LLC, a Texas limited liability company, TTG Operations LLC, a Texas limited liability company, and/or LT Resources, Inc., a Texas corporation.

(9). Any claim against Angela Kilic-Cave and/or Dari Concepts, LLC, a Delaware limited liability company, relating to or arising from the alleged breach of any covenants not to encumber any assets made by TieTek Global LLC, a Texas limited liability company, TTG Real Estate LLC, a Texas limited liability company, TTG Operating LLC, a Texas limited liability company, and/or LT Resources, Inc., a Texas corporation.

4866-4144-9259.v4